**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | : |
| | : |
| Plaintiff, | :   Civil Case No. 1:15-cv-1427 |
| | : |
| v. | : |
| | : |
| SANCHEZ, INC., et al., | :   JUDGE DAN POLSTER |
| | : |
| Defendants. | : |
| | : |

**CONSENT JUDGMENT**

Plaintiff, Thomas E. Perez, Secretary of Labor, United States Department of Labor (the "Secretary"), having filed his Complaint against Defendants Sanchez, Inc. (d/b/a Rancho Fiesta) and Lorenzo Sanchez (collectively, "Defendants"), having answered and denied all of the material allegations of the Complaint, hereby agree to the entry of this Judgment without contest under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.* ("FLSA" or "Act").  It is therefore, for cause shown, ordered that:

1.    Defendants, their agents, servants, employees, and all persons in active concert with them, are permanently enjoined and restrained from violating the provisions of §§15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938 (the "Act"), in any of the following manners:

    A.    Defendants shall not, contrary to Section 6 of the Act, employ any of their employees engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, as defined by the Act, unless the employees

1

receive compensation for their employment at a rate not less than the prevailing federal minimum wage rate.

B.     Defendants shall not, contrary to Section 7 of the Act, employ any of their employees engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, as defined by the Act, for workweeks longer than forty (40) hours, unless the employee receives compensation for his employment in excess of forty (40) hours per week at a rate not less than one and one-half times the regular rate at which he is employed.

C.     Defendants shall not fail to make, keep, and preserve records of their employees, and of the wages, hours, and other conditions and practices of employment maintained by them, as prescribed by the regulations of the Administrator or the Secretary of Labor issued, and from time to time amended, pursuant to Section 11(c) of the Act, and found in Title 29, Chapter V, Code of Federal Regulations, Part 516. Regardless of whether Defendants choose to make payments by cash, check, or other means, records of such payment must be maintained in accordance with the foregoing sections of the FLSA and its regulations.

D.     Defendants shall not, contrary to Section 12 of the Act, employ minors under the age of eighteen, engaged in commerce or in the production of goods for commerce within the meaning of the Act, in a manner that interferes with their schooling and/or under conditions that interfere with their health and well-being as proscribed by Section 3(l) of the Act.

2.      The Secretary shall recover from Defendants $70,000, which represents the unpaid compensation alleged to be owed to the current and/or former employees named in Exhibit 1 (attached hereto and incorporated herein), in the amounts set forth therein for the period of July 2, 2011, through December 14, 2014.

3.      Defendants shall pay an additional equal sum of $70,000 as liquidated damages alleged to be owed to the current and/or former employees named in Exhibit 1, plus post-judgment interest at a rate of one percent, in the amounts set forth therein for the period of July 2, 2011, through December 14, 2014.  The unpaid compensation, plus liquidated damages, shall be referred to herein as the "Amount Owed".

4.      The monetary provisions of this Judgment shall be deemed satisfied upon Defendants' delivery to the Secretary of the following:

A.      Defendants shall make an initial payment of  $70,000 on or before January 9, 2017.  The remaining Amount Owed  shall be paid to the Secretary by Defendants in installments as follows:

| Due Date | Amount Due |
|----------|------------|
| 04/09/17 | $10,029.76 |
| 07/09/17 | $10,053.00 |
| 10/09/17 | $10,073.73 |
| 01/09/18 | $10,106.49 |
| 04/09/18 | $10,123.19 |
| 07/09/18 | $10,162.80 |
| 10/09/18 | $10,151.02 |

B.      Each payment shall be paid by Defendants submitting a certified check or cashier's check payable to "United States Department of Labor – Wage and Hour Division".

C.      The payments shall be sent to: United States Department of Labor, Midwest Regional Office, Wage and Hour Division, P.O. Box 2638, Chicago, Illinois 60690-2638.

D.      The Secretary shall distribute the proceeds of each installment check – less legal deductions for each employee's share of social security and federal withholding taxes – to the persons listed in Exhibit 1, or to their estates, if that be necessary.

E.      Any of the Amount Owed not so paid within a period of three years from the date of the Secretary's receipt thereof shall, pursuant to Section 16(c) of the Act, be covered into the Treasury of the United States as miscellaneous receipts.

F.      Defendants shall be responsible for the employer's share of FICA, Medicare, and other applicable taxes and any other necessary payments to the appropriate federal and state revenue authorities for the employees listed in Exhibit 1.

G.      The failure of Defendants to make payment within ten days of the due date as provided herein shall result in the balance then owing being due immediately from the Defendants.

H.      The failure of Defendants to make payment as provided herein shall result in the Amount Owed being subject to the assessment of such interest and costs as required by the Debt Collection Improvement Act of 1996 (Public Law 104-134) published by the Secretary of the Treasury in the Federal Register.

5.      Defendants acknowledge having received and read WH Publication 1330 (Child Labor Provisions for Nonagricultural Occupations Under the Fair Labor

4

Standards Act), Wage and Hour Division Fact Sheet #2 (Restaurants and Fast Food Establishments Under the Fair Labor Standards Act (FLSA)), and Wage and Hour Division Fact Sheet #2A (Child Labor Rules for Employing Youth in Restaurants and Quick-Service Establishments Under the Fair Labor Standards Act (FLSA)), attached hereto as Exhibits 2,3, and 4, respectively.

6.      Defendants shall conduct internal self-audits on a semi-annual basis for a period of two years from the entry of this Judgment.

      A.      These self-audits will review Defendants' payrolls, tip records, hours records, employee records, and posters to ensure that Defendants are in compliance with the Act.

      B.      If a self-audit performed pursuant to this paragraph reveals any errors, Defendants shall take immediate (within one pay period) corrective action and pay any back wages owed as soon as possible, but in any event no later than thirty days from the detection of such errors by the self-audit.

      C.      Defendants shall document each self-audit and the results and maintain such documentation for a period of three years from each audit's conclusion.  Defendants shall provide such documentation to the Wage and Hour Division in the event of any future investigation(s).

7.      Defendants shall provide all current staff with training on compliance with the Act.  The training, which shall be completed no later than March 1, 2017, shall cover information contained in the following Wage and Hour Division Fact Sheets pertaining to minimum wage, overtime, recordkeeping, child labor, and tipped employees:

      A.      Fact Sheet #2:  Restaurants and Fast Food Establishments Under the Fair Labor Standards Act (FLSA) (attached as Exhibit 3) or Hoja de datos #2:

5

Restaurantes y Establecimientos de Comida Rapida bajo la Ley de Normas Justas de Trabago (FLSA – siglas en inglés) (attached as Exhibit 5)

B.      Fact Sheet #23:  Overtime Pay Requirements of the FLSA (attached as Exhibit 6) or Hoja de datos #23:  Requisitos para el pago de sobretiempo bajo la Ley de Normas Razonables de Trabajo (attached as Exhibit 7)

C.      Fact Sheet #21:  Recordkeeping Requirements under the Fair Labor Standards Act (FLSA) (attached as Exhibit 8) or Hoja de datos #21:  Requisitos para preserver los Registros conforme a la Ley de Normas Razonables de Trabajo (FLSA-abreviatura en inglés) (attached as Exhibit 9)

D.      Fact Sheet #2A: Child Labor Rules for Employing Youth in Restaurants and Quick-Service Establishments Under the Fair Labor Standards Act (FLSA) (attached as Exhibit 4) or Hoja de datos #2A: El Empleo de Jovenes en Restaurantes bajo la Ley Normas Razonables de Trabajo (FLSA-abreviatura en inglés) (attached as Exhibit 10)

E.      Defendants shall thereafter distribute to all newly-hired employees, upon their hire, copies of the foregoing fact sheets, which are also available at *https://www.dol.gov/WHD/fact-sheets-index.htm* .

8.      During the training described in Paragraph 4, Defendants shall provide employees with a document setting forth the links to the U.S. Department of Labor - Wage and Hour Division website found at: *http://www.dol.gov/whd/*

and to the DOL Timesheet Application for smart phones found at:

*https://itunes.apple.com/us/app/dol-timesheet/id433638193?mt=8* .

Such document shall also be provided to all newly-hired employees upon hire.

9.      For Defendants' employees who are fluent in Spanish, but not English, Defendants shall provide the training and/or documents described in Paragraphs 4 and 5 in Spanish.  For employees who are fluent in English, the training and/or documents described in Paragraphs 4 and 5 shall be provided in English.

10.     Defendants shall document all tips and tip pooling and shall provide tipped employees with the required notices found at 29 C.F.R. §531.59(b).

11.     The attached Exhibits 1 through 10 are incorporated in and made a part of this Judgment.

12.     Defendants shall not request, solicit, suggest, or coerce, directly or indirectly, any employee to return or to offer to return to Defendants or to someone else on behalf of Defendants any money in the form of cash, check, or any other form, for wages previously due or to become due in the future to said employee under the provisions of this Judgment or the Act; nor shall Defendants discharge or in any other manner discriminate, solicit, or encourage anyone else to discriminate against any such employee because such employee has received or retained money due to him from the Defendants under the provisions of this Judgment.  Defendants also shall not accept, directly or indirectly, from any employee listed in Exhibit 1, any money said employee receives pursuant to this Judgment.

13.     No costs or disbursement are allowed.

Dated this __12th__ day of _____December_____, 2016.


_____
JUDGE DAN A. POLSTER

Submitted by :
 _/s/ David S. Carto (via email consent)_         _____
DAVID D. CARTO (0021632)                    HEMA STEELE (0081456)
Attorney                                    Trial Attorney

7

Weldon, Huston & Keyser, LLP
76 North Mulberry Street
Mansfield, Ohio 44902
(419) 524-9811, Ext. 34
(419) 522-5758 (facsimile)
*dcarto@whkmansfield.com*

*Counsel for Defendants*

U.S. Department of Labor
881 Federal Office Building
1240 East Ninth Street
Cleveland, Ohio 44199
(216) 522-3876; Fax (216) 522-7172
*Steele.Hema@dol.gov*

OF COUNSEL:

BENJAMIN T. CHINNI
Associate Regional Solicitor

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2016, the foregoing *Consent Judgment* was filed via the Court's ECF system.

*/s/ Hema Steele*
HEMA STEELE (0081456)
Trial Attorney
U.S. Department of Labor
1240 E. 9th Street, Room 881
Cleveland, Ohio 44199
(216) 522-3876
(216) 522-7172 (facsimile)
*Steele.Hema@dol.gov*

8

# U.S. Department of Labor
Wage and Hour Division



| Office Address: | Columbus OH District Office<br>US Dept. of Labor, ESA, Wage & Hour Div.<br>200 North High St., Rm. 646<br>Columbus, OH  43215-2475<br>614-469-5678 | Investigator:<br>**Guillermo Sapia** | Date:<br>**12/08/2016** |
|---|---|---|---|
| | | Employer Fed Tax ID Number: | **34-1897247** |

| Name | | Period Covered by Work Week Ending Dates | Act(s) | BWs Due | LDs Due | Total |
|---|---|---|---|---|---|---|
| Alas, David | | 02/23/2013 to 12/13/2014 | FLSA | $2,223.19 | $2,228.75 | $4,451.94 |
| | | | | $2,223.19 | $2,228.75 | $4,451.94 |
| Almora, Angel | | 07/26/2014 to 12/13/2014 | FLSA | $910.86 | $913.14 | $1,824.00 |
| | | | | $910.86 | $913.14 | $1,824.00 |
| Armendariz, Domingo | | 05/04/2013 to 12/13/2014 | FLSA | $2,630.43 | $2,637.01 | $5,267.44 |
| | | | | $2,630.43 | $2,637.01 | $5,267.44 |
| Baten, Oscar | | 11/19/2011 to 06/28/2014 | FLSA | $6,134.44 | $6,154.53 | $12,288.97 |
| | | | | $6,134.44 | $6,154.53 | $12,288.97 |
| Briones, Cecilio | | 01/26/2013 to 06/15/2013 | FLSA | $1,036.44 | $1,041.62 | $2,078.06 |
| | | | | $1,036.44 | $1,041.62 | $2,078.06 |
| Buenfil, Hector | | 12/13/2014 to 12/13/2014 | FLSA | $85.86 | $86.29 | $172.15 |
| | | | | $85.86 | $86.29 | $172.15 |

| | Employer Name and Address:<br>Rancho Fiesta<br>Sanchez, Inc.<br>1360 S Trimble Road<br>Mansfield OH 44907 | Subtotal: | $13,021.22 | $13,061.34 | $26,082.56 |
|---|---|---|---|---|---|

Form WH-56

# U.S. Department of Labor
Wage and Hour Division



| Office Address: | Columbus OH District Office<br>US Dept. of Labor, ESA, Wage & Hour Div.<br>200 North High St., Rm. 646<br>Columbus, OH 43215-2475<br>614-469-5678 | | Investigator:<br>**Guillermo Sapia** | | Date:<br>**12/08/2016** |
|---|---|---|---|---|---|
| | | | Employer Fed Tax ID Number: | **34-1897247** | |

| Name | | Period Covered<br>by Work Week<br>Ending Dates | Act(s) | BWs Due | LDs Due | Total |
|---|---|---|---|---|---|---|
| Canseco-Cortes,<br>Jacinto | | 07/02/2011<br>to<br>12/13/2014 | FLSA | $8,527.95 | $8,574.46 | $17I02.41 |
| | | | | $8,527.95 | $8,574.46 | $17,102.4190 |
| Cortes, Nicolas | | 02/23/2013<br>to<br>11/29/2014 | FLSA | $2,730.08 | $2,750.56 | $5,480.64 |
| | | | | $2,730.08 | $2,750.56 | $5,480.64 |
| Flores, Jaime | | 03/23/2013<br>to<br>11/29/2014 | FLSA | $4,066.94 | $4,097.44 | $8,164.38 |
| | | | | $4,066.94 | $4,097.44 | $8,164.38 |
| Gallegos, Jose | | 07/27/2013<br>to<br>11/29/2014 | FLSA | $2,516.91 | $2,537.95 | $5,054.86 |
| | | | | $2,516.91 | $2,537.95 | $5,054.86 |
| Gramajo-Villato,<br>Nelson A | | 02/23/2013<br>to<br>12/13/2014 | FLSA | $3,846.03 | $3,884.49 | $7,730.52 |
| | | | | $3,846.03 | $3,884.49 | $7,730.52 |
| Guerrero-Leyua, Jose<br>G | | 02/23/2013<br>to<br>11/15/2014 | FLSA | $3,102.17 | $3,133.19 | $6,235.36 |
| | | | | $3,102.17 | $3,133.19 | $6,235.36 |

| | Employer Name and Address:<br>Rancho Fiesta<br>Sanchez, Inc.<br>1360 S Trimble Road<br>Mansfield OH 44907 | Subtotal: | $24,790.08 | $24,978.09 | $49,768.17 |
|---|---|---|---|---|---|

Form WH-56



# U.S. Department of Labor
Wage and Hour Division

| Office Address: | Columbus OH District Office<br>US Dept. of Labor, ESA, Wage & Hour Div.<br>200 North High St., Rm. 646<br>Columbus, OH  43215-2475<br>614-469-5678 | Investigator:<br>Guillermo Sapia | | Date:<br>12/08/2016 |
| --- | --- | --- | --- | --- |
| | | Employer Fed Tax ID Number: | 34-1897247 | |

| Name | | Period Covered<br>by Work Week<br>Ending Dates | Act(s) | BWs Due | LDs Due | Total |
| --- | --- | --- | --- | --- | --- | --- |
| Labra, Fernando | | 02/23/2013<br>to<br>11/15/2014 | FLSA | $3,485.45 | $3,523.54 | $7,008.99 |
| | | | | $3,485.45 | $3,523.54 | $7,008.99 |
| Labra, Miguel | | 02/23/2013<br>to<br>11/15/2014 | FLSA | $2,825.93 | $2,861.25 | $5,687.18 |
| | | | | $2,825.93 | $2,861.25 | $5,687.18 |
| Lara, Ezequiel | | 11/29/2014<br>to<br>12/13/2014 | FLSA | $177.44 | $179.66 | $357.10 |
| | | | | $177.44 | $179.66 | $357.10 |
| Larinaga, Ismael | | 10/05/2013<br>to<br>07/26/2014 | FLSA | $1,522.78 | $1,541.81 | $3,064.59 |
| | | | | $1,522.78 | $1,541.81 | $3,064.59 |
| Loaisiga, Javier | | 03/09/2013<br>to<br>07/26/2014 | FLSA | $2,501.98 | $2,533.25 | $5,035.23 |
| | | | | $2,501.98 | $2,533.25 | $5,035.23 |
| Lopez, Jose A | | 09/21/2013<br>to<br>10/18/2014 | FLSA | $2,568.50 | $2,602.84 | $5,171.34 |
| | | | | $2,568.50 | $2,602.84 | $5,171.34 |

| Employer Name and Address:<br>Rancho Fiesta<br>Sanchez, Inc.<br>1360 S Trimble Road<br>Mansfield OH 44907 | Subtotal: | $13,082.08 | $13,242.35 | $26,324.43 |
| --- | --- | --- | --- | --- |

Form WH-56

# U.S. Department of Labor
Wage and Hour Division



| Office Address: | Columbus OH District Office<br>US Dept. of Labor, ESA, Wage & Hour Div.<br>200 North High St., Rm. 646<br>Columbus, OH  43215-2475<br>614-469-5678 | Investigator:<br>**Guillermo Sapia** | | Date:<br>12/08/2016 |
|---|---|---|---|---|
| | | Employer Fed Tax ID Number: | | 34-1897247 |

| Name | | Period Covered by Work Week Ending Dates | Act(s) | BWs Due | LDs Due | Total |
|---|---|---|---|---|---|---|
| Luevano, Humberto | | 02/23/2013<br>to<br>12/13/2014 | FLSA | $3,567.78 | $3,621.30 | $7,189.08 |
| | | | | $3,567.78 | $3,621.30 | $7,189.08 |
| Mejia, Mario | | 02/23/2013<br>to<br>12/13/2014 | FLSA | $1,793.79 | $1,820.70 | $3,614.49 |
| | | | | $1,793.79 | $1,820.70 | $3,614.49 |
| Monroiy, Abraham | | 09/06/2014<br>to<br>12/13/2014 | FLSA | $756.71 | $768.06 | $1,524.77 |
| | | | | $756.71 | $768.06 | $1,524.77 |
| Narvaez, Jose F | | 02/23/2013<br>to<br>12/13/2014 | FLSA | $2,981.98 | $3,026.71 | $6,008.69 |
| | | | | $2,981.98 | $3,026.71 | $6,008.69 |
| Navarro, Luis | | 04/19/2014<br>to<br>11/15/2014 | FLSA | $1,604.15 | $1,632.20 | $3,236.35 |
| | | | | $1,604.15 | $1,632.20 | $3,236.35 |
| Serrano, Jose | | 08/23/2014<br>to<br>12/13/2014 | FLSA | $518.55 | $527.62 | $1,046.17 |
| | | | | $518.55 | $527.62 | $1,046.17 |

| | Employer Name and Address:<br>Rancho Fiesta<br>Sanchez, Inc.<br>1360 S Trimble Road<br>Mansfield OH 44907 | Subtotal: | $11,222.96 | $11,396.59 | $22,619.55 |
|---|---|---|---|---|---|

Form WH-56

# U.S. Department of Labor
Wage and Hour Division



| Office Address: | Columbus OH District Office<br>US Dept. of Labor, ESA, Wage & Hour Div.<br>200 North High St., Rm. 646<br>Columbus, OH 43215-2475<br>614-469-5678 | Investigator:<br>Guillermo Sapia | | Date:<br>12/08/2016 |
|---|---|---|---|---|
| | | Employer Fed Tax ID Number: | | 34-1897247 |

| Name | | Period Covered by Work Week Ending Dates | Act(s) | BWs Due | LDs Due | Total |
|---|---|---|---|---|---|---|
| Solano, Crescenciano | | 10/05/2013<br>to<br>12/13/2014 | FLSA | $2,644.84 | $2,691.12 | $5,335.96 |
| | | | | $2,644.84 | $2,691.12 | $5,335.96 |
| Soto Valdez, Gabriel | | 06/28/2014<br>to<br>08/09/2014 | FLSA | $372.06 | $378.57 | $750.63 |
| | | | | $372.06 | $378.57 | $750.63 |
| Suarez, Mario | | 02/23/2013<br>to<br>04/20/2013 | FLSA | $307.33 | $312.71 | $620.04 |
| | | | | $307.33 | $312.71 | $620.04 |
| Tica, Diego | | 09/20/2014<br>to<br>12/13/2014 | FLSA | $123.23 | $125.39 | $248.62 |
| | | | | $123.23 | $125.39 | $248.62 |
| Tunay, Obdulio | | 12/29/2012<br>to<br>12/13/2014 | FLSA | $4,436.20 | $4,513.83 | $8,950.03 |
| | | | | $4,436.20 | $4,513.83 | $8,950.03 |

| Employer Name and Address:<br>Rancho Fiesta<br>Sanchez, Inc.<br>1360 S Trimble Road<br>Mansfield OH 44907 | Subtotal: | $7,883.66 | $8,021.62 | $15,905.28 |
|---|---|---|---|---|
| | Total: | $70,000.00 | $70,699.99 | $140,699.99 |

Form WH-56



# Child Labor Provisions for Nonagricultural Occupations Under the Fair Labor Standards Act

U. S. Department of Labor
Wage and Hour Division

Child Labor Bulletin 101
WH-1330
Revised February 2013

 

The Department of Labor is providing this information as a public service.  This information and related materials are presented to give the public access to information on Department of Labor programs.  You should be aware that, while we try to keep the information timely and accurate, there will often be a delay between official publications of the materials and the modification of these pages. Therefore, we make no express or implied guarantees. The *Federal Register* and the *Code of Federal Regulations* remain the official source for regulatory information published by the Department of Labor.  We will make every effort to correct errors brought to our attention.

Material contained in this publication is in the public domain and may be reproduced, fully or partially, without permission of the Federal Government.  Source credit is requested but not required.  Permission is required only to reproduce any copyrighted material contained herein.

This publication is available on the Internet on the Wage and Hour Division Home Page at the following address: http://www.dol.gov/whd/regs/compliance/childlabor101 _text.htm.

This material may be obtained in alternative format (Large Print or Disc), upon request, by calling: (202) 693-0675.

TTY/TDD callers may dial toll-free 1-877-889-5627 to ask for information or request materials in alternative format. A customer service representative is available to assist you with referral information from 8 a.m. to 5 p.m. **in your own time zone**.

## Contents

Federal Child Labor Provisions                                                1
Coverage of the Child Labor Provisions                                        2
Exemptions from the Child Labor Provisions                                    3
Minimum Age Standards for Nonagricultural Employment                          3
Wage Payments to Young Workers                                                3
Employment Standards for 14- and 15-Year-Olds, Hours Standards                4
Employment Standards for 14- and 15-Year-Olds, Occupation Standards           5
Employment Standards for 16- and 17-Year-Olds                                 7
Hazardous Occupations Orders for Nonagricultural Employment                   8
Special Provisions Permitting the Employment of Certain Minors in
    Places of Business that use Machinery to Process Wood Products           24
Exemptions from Certain HOs for Apprentices and Student-Learners             24
Age Certificates                                                            25
Enforcement of the Federal Child Labor Provisions                           25
Penalties for Violation                                                     26
Additional Information                                                       26

## FEDERAL CHILD LABOR PROVISIONS

The federal child labor provisions, also known as the child labor laws, are authorized by the Fair Labor Standards Act (FLSA) of 1938. These provisions were enacted to ensure that when young people work, the work is safe and does not jeopardize their health, well-being or educational opportunities. By knowing, understanding, and complying with these provisions, employers, parents, and teachers can help working teens enjoy those safe, positive, early work experiences that can be so important to their development.

## CHILD LABOR BULLETIN No. 101

This booklet is a guide to the provisions of the FLSA (also known as the "Wage-Hour Law") which applies to minors employed in *nonagricultural* occupations. In addition to child labor provisions, the FLSA contains provisions on minimum wage, overtime, and recordkeeping.

See *Child Labor Bulletin No. 102* for information regarding the employment of minors in agriculture.

## OTHER LAWS THAT IMPACT CHILD LABOR

Other federal and state laws may have higher standards. When these apply, the more stringent standard must be observed. All states have child labor provisions, compulsory school attendance laws, and establish the minimum ages and conditions under which youths may operate motor vehicles.

Unless otherwise exempt, a covered minor employee is entitled to receive the same minimum wage, overtime, safety and health, and nondis-crimination protections as adult workers.

## Coverage of the Child Labor Provisions

## Who is Covered?

### *Enterprise Coverage:*

All employees of certain enterprises having workers engaged in interstate commerce, producing goods for interstate commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for such commerce by any person are covered by the FLSA.  A covered enterprise is the related activities performed through unified operation or common control by any person or persons for a common business purpose and:

1.  whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated); or
2.  is engaged in the operation of a hospital, an institution primarily engaged in the care of those who are physically or mentally ill or disabled or aged, and who reside on the premises, a school for children who are mentally or physically disabled or gifted, a preschool, an elementary or secondary school, or an institution of higher education (whether operated for profit or not for profit); or
3.  is an activity of a public agency.

Construction and laundry/dry cleaning enterprises, which were previously covered regardless of their annual dollar volume of business, are now subject to the $500,000 test.

Any enterprise that was covered by the FLSA on March 31,1990, and that ceased to be covered because of the increase in the enterprise coverage dollar volume test must continue to pay its employees not less than $3.35 an hour, and continues to be subject to the overtime pay, child labor, and recordkeeping provisions of the FLSA.

### *Individual Coverage:*

Employees of firms which are not covered enterprises under the FLSA may still be subject to its minimum wage, overtime, and child labor provisions if they are individually engaged in interstate commerce or in the production of goods for interstate commerce. Such employees include those who:  work in communications or transportation; regularly use the mail, telephone, computer e-mail system and/or facsimile machine to communicate with persons in another state; make deposits in banks; use an electronic device which authorizes a credit card purchase; keep records of interstate transactions; handle, ship, or receive goods moving in interstate commerce; regularly cross state lines in the course of employment; or work for independent employers who contract to do clerical, custodial, maintenance, or other work for firms engaged in interstate commerce or the production of goods for interstate commerce.

Young entrepreneurs who use the family lawnmower to cut their neighbor's grass or perform babysitting on a casual basis are not covered under the FLSA.

## The Federal Child Labor Provisions <u>Do</u> <u>Not</u>:

- require minors to obtain "working papers" or "work permits," though many states do;
- limit the number of hours or times of day that workers 16 years of age and older may legally work, though many states do;
- apply to any employee whose services during the workweek are performed in a workplace within a foreign country or within a territory named in section 13(f) of the FLSA.

Check with the applicable state Department of Labor for guidance concerning state laws.

## Exemptions from the Child Labor Provisions of the FLSA

The federal child labor provisions do not apply to:

- Children 16- and 17 years of age employed by their parents in occupations other than those declared hazardous by the Secretary of Labor.
- Children under 16 years of age employed by their parents in occupations other than manufacturing or mining, or occupations declared hazardous by the Secretary of Labor.
- Children employed as actors or performers in motion pictures, theatrical, radio or television productions.
- Children engaged in the delivery of newspapers to the consumer.
- Homeworkers engaged in the making of wreaths composed principally of natural holly, pine, cedar, or other evergreens (including the harvesting of the evergreens).

## Minimum Age Standards for Nonagricultural Employment

**14**  Minimum age for employment in specified occupations outside of school hours for limited periods of time each day and each week.

**16**  BASIC MINIMUM AGE FOR EMPLOYMENT. At 16 years of age, youth may be employed for unlimited hours in any occupation other than one declared to be hazardous by the Secretary of Labor.

**18**  Minimum age for employment in nonagricultural occupations declared hazardous by the Secretary of Labor.

## Wage Payments to Young Workers

Unless otherwise exempt or employed under conditions discussed below, covered minor employees must be paid at least the statutory minimum wage for all hours worked.

Employees under 20 years of age may be paid $4.25 per hour during their first consecutive 90 calendar days of employment with an employer.

Certain full-time students, student learners, apprentices and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.

Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligations.  If an employee's tips combined with the employer's cash wage of at least $2.13 do not equal the minimum hourly wage, the employer must make up the difference.

# Employment Standards for 14- and 15-Year-Olds
# in Nonagricultural Employment

> These requirements are published in Subpart C of Part 570 of Title 29 of the Code of Federal Regulations, Child Labor Regulation No. 3.

**The FLSA confines the employment of 14- and 15-year-olds to those jobs and time periods that the Secretary of Labor has determined will not interfere with their schooling and to conditions which will not interfere with their health and well-being.  Jobs that are not specifically permitted are prohibited.**

# Hours-Time Standards for 14- and 15-Year-Olds

## Fourteen- and 15-Year-Olds May Not Be Employed:

1. DURING SCHOOL HOURS, *except* as provided in Work Experience and Career Exploration Programs and Work-Study Programs.
2. BEFORE 7 a.m. or AFTER 7 p.m. *except* from June 1 through Labor Day when the evening hour is extended to 9 p.m. (time is based on local standards; i.e., whether the locality has adopted daylight savings time).
3. MORE THAN 3 HOURS A DAY ON A SCHOOL DAY, INCLUDING FRIDAYS.
4. MORE THAN 8 HOURS A DAY ON A NONSCHOOL DAY.
5. MORE THAN 18 HOURS A WEEK DURING A SCHOOL WEEK.
6. MORE THAN 40 HOURS A WEEK DURING NONSCHOOL WEEKS.

    As used above, the term *week* means the same workweek adopted by the employer for the employee to determine when overtime hours are worked in accordance with Regulations, 29 CFR 778.105.

    *School hours* are determined by the local public school in the area the minor is residing while employed – this is true even if the minor does not attend the public school (*i.e.*, attends a private school or is home schooled).  Special provisions apply to students participating in a state sponsored Work Experience and Career Exploration Program or Work-Study Program authorized by the Department of Labor in accordance with §§ 570.36 or 570.37 of Regulations 29 CFR Part 570.

## Exceptions from the "school in session" provisions

    School is not considered to be in session, and exceptions from the hours limitations standards listed in paragraphs 1, 3, 5 in the column to the left are provided, for any youth 14 or 15 years of age who:

1. Has graduated from high school;
2. Has been excused from compulsory school attendance by the state or other jurisdiction once he or she has completed the eighth grade and his or her employment complies with all the requirements of the state school attendance law;
3. Has a child to support and appropriate state officers, pursuant to state law, have waived school attendance requirements for this minor;
4. Is subject to an order of a state or federal court prohibiting him or her from attending school; or
5. Has been permanently expelled from the local public school he or she would normally attend, unless the youth is required, by state or local law or ordinance, or by court order, to attend another school.

### *Limited exemption for professional sports attendants:*

    Section 570.35(b) of Regulations 29 CFR Part 570 grants a partial waiver from the hours standards limitations for 14- and 15-year-olds who are employed as professional sports attendants and performing the traditional duties of that position.  These minors are still precluded from working during school hours.

4

# Occupation Standards for 14- and 15-Year-Olds

**The following list, which is not exhaustive, are jobs that 14- and 15-Year-Olds <u>MAY NOT</u> Be Employed in:**

1. Any MANUFACTURING occupation.[1]
2. Any MINING occupation.
3. Most PROCESSING occupations such as filleting of fish, dressing poultry, cracking nuts, developing of photographs, laundering, bulk or mass mailings (*except* certain occupations expressly permitted as discussed below).
4. Occupations requiring the performance of any duties in WORKROOMS or WORKPLACES WHERE GOODS ARE MANUFACTURED, MINED OR OTHERWISE PROCESSED (*except* to the extent expressly permitted as discussed below; and as discussed in footnote 1 below).
5. ANY OCCUPATION FOUND AND DECLARED TO BE HAZARDOUS BY THE SECRETARY OF LABOR.
6. Occupations involved with the operating, tending, setting up, adjusting, cleaning, oiling or repairing of HOISTING APPARATUS.
7. Work performed in or about BOILER OR ENGINE ROOMS or in connection with the MAINTENANCE OR REPAIR OF THE ESTABLISHMENT, MACHINES, OR EQUIPMENT.
8. Occupations involved with the operating, tending, setting up, adjusting, cleaning, oiling or repairing or of ANY POWER-DRIVEN MACHINERY, including, but not limited to, lawnmowers, golf carts, all-terrain vehicles, trimmers, cutters, weed-eaters, edgers, food slicers, food grinders, food choppers, food processors, food cutters, and food mixers. Fourteen- and 15-year-olds may operate most office machinery and those machines that are expressly permitted and discussed below on page 6.
9. THE OPERATION OF MOTOR VEHICLES OR SERVICE AS HELPERS ON SUCH VEHICLES.
10. THE RIDING ON A MOTOR VEHICLE inside or outside of an enclosed passenger compartment except as permitted below on page 6.
11. OUTSIDE WINDOW WASHING that involves working from window sills.
12. ALL WORK REQUIRING THE USE OF LADDERS, SCAFFOLDS, OR THEIR SUBSTITUTES.
13. ALL BAKING AND MOST COOKING ACTIVITIES except as discussed below on page 6.
14. WORK IN FREEZERS AND MEAT COOLERS AND ALL WORK IN THE PROCESSING OF MEAT FOR SALE; however, youth are permitted to occasionally enter freezers only momentarily to retrieve items.
15. YOUTH PEDDLING, including not only the attempt to make a sale or the actual consummation of a sale, but also the preparatory and concluding tasks normally performed by a youth peddler, such as the loading and unloading of motor vehicles, the stocking and restocking of sales kits and trays, the exchanging of cash and checks with the employer, and the transportation of the minors to where the sales will be made.
16. LOADING AND UNLOADING of goods or property onto or from MOTOR VEHICLES, RAILROAD CARS, AND CONVEYORS, except as discussed below on page 6.
17. CATCHING AND COOPING OF POULTRY in preparation for transport or for market.
18. PUBLIC MESSENGER SERVICE.
19. OCCUPATIONS IN CONNECTION WITH:
    a. TRANSPORTATION of persons or property by rail, highway, air, on water, pipeline, or other means.
    b. WAREHOUSING and STORAGE.
    c. COMMUNICATIONS and PUBLIC UTILITIES.
    d. CONSTRUCTION (including repair).
       *Except* 14- and 15-year-olds may perform office or sales work in connection with a., b., c., and d. above when not performed on transportation media, on an actual means of transportation, or at the actual construction site.

---

[1] Section 13(c)(7) of the FLSA, enacted in 2004, permits the employment of certain minors between the ages of 14 and 18, who have been excused from compulsory school attendance, inside and outside of places of business where machinery is used to process wood products.  This provision, however, does not permit such minors to operate, or assist in the operation of power-driven woodworking machines.

**The following is the list of jobs the Secretary of Labor has determined will not interfere with the schooling, health, and well-being of 14- and 15-year-olds and therefore MAY BE performed by such youth.  <u>Any job not specifically permitted, is prohibited.</u>**

1.  OFFICE and CLERICAL WORK, including operation of office machines.
2.  WORK OF AN INTELLECTUAL OR ARTISTICALLY CREATIVE NATURE such as but not limited to computer programming, the writing of software, teaching or performing as a tutor, serving as a peer counselor or teacher's assistant, singing, the playing of a musical instrument, and drawing, as long as such employment complies with all the other provisions contained in §§ 570.33, .34, and .35.
3.  COOKING with electric or gas grills that do not involve cooking over an open flame and with deep fat fryers that are equipped with and utilize devices that automatically lower and raise the baskets into and out of the oil or grease.  *NOTE*: this section does not permit cooking with equipment such as rotisseries, broilers, pressurized equipment including fryolators, and cooking devices that operate at extremely high temperatures such as "Neico broilers."
4.  CASHIERING, SELLING, MODELING, ART WORK, WORK IN ADVERTISING DEPARTMENTS, WINDOW TRIMMING and COMPARATIVE SHOPPING.
5.  PRICE MARKING and TAGGING by hand or by machine.  ASSEMBLING ORDERS, PACKING and SHELVING.
6.  BAGGING and CARRYING OUT CUSTOMER ORDERS.
7.  ERRAND and DELIVERY WORK by foot, bicycle, and public transportation. Except such youth may not be employed by a public messenger service.
8.  CLEANUP WORK, including the use of vacuum cleaners and floor waxers, and the maintenance of grounds, but not including the use of power-driven mowers, cutters, trimmers, edgers, or similar equipment.
9.  KITCHEN WORK and other work involved in preparing and serving food and beverages, including operating machines and devices used in performing such work.  Examples of permitted machines and devices include, but are not limited to, dishwashers, toasters, dumbwaiters, popcorn poppers, milk shake blenders, coffee grinders, automatic coffee machines, devices used to maintain the temperature of prepared foods (such as warmers, steam tables, and heat lamps), and microwave ovens that are used only to warm prepared food and do not have the capacity to warm above 140 °F.
10. CLEANING KITCHEN EQUIPMENT.  Minors are permitted to clean kitchen equipment (not otherwise prohibited), remove oil or grease filters, pour oil or grease through filters, and move receptacles containing hot grease or hot oil, but only when the equipment, surfaces, containers and liquids do not exceed a temperature of 100°F.
11. CLEANING VEGETABLES AND FRUITS, AND THE WRAPPING, SEALING, LABELING, WEIGHING, PRICING, AND STOCKING OF ITEMS, INCLUDING VEGETABLES, FRUITS, AND MEATS, when performed in areas physically separate from a freezer or meat cooler.
12. LOADING ONTO MOTOR VEHICLES AND THE UNLOADING FROM MOTOR VEHICLES of the light, non-power-driven, hand tools and personal protective equipment that the minor will use as part of his or her employment at the work site; and the loading onto motor vehicles and the unloading from motor vehicles of personal items such as a back pack, a lunch box, or a coat that the minor is permitted to take to the work site. Such light tools would include, but not be limited to, rakes, hand-held clippers, shovels, and brooms. Such light tools would not include items like trash, sales kits, promotion items or items for sale, lawn mowers, or other power-driven lawn maintenance equipment.  Such minors would not be permitted to load or unload safety equipment such as barriers, cones, or signage.
13. THE OCCUPATION OF LIFEGUARD (15-year-olds but not 14-year-olds) at traditional swimming pools and water amusement parks (including such water park faculties as wave pools, lazy rivers, specialized activity areas, and baby pools, but not including the elevated areas of water slides) when properly trained and certified in aquatics and water safety by the American Red Cross or a similar certifying organization. No youth under 16 years of age may be employed as a lifeguard at a natural environment such as an ocean side beach, lake, pond, river, quarry, or pier.
14. Employment of certain youth under specified conditions inside and outside of establishments WHERE MACHINERY IS USED TO PROCESS WOOD PRODUCTS.  See page 24 of this guide for information on this exemption.

15.  WORK IN CONNECTION WITH CARS AND
     TRUCKS if confined to the following:
     -  Dispensing gasoline and oil.
     -  Courtesy service on premises of gasoline
        service station.
     -  Car cleaning, washing, and polishing by hand.
     -  Other occupations permitted by Child Labor
        Regulation No. 3, BUT NOT INCLUDING
        WORK involving the use of pits, racks or
        lifting apparatus or involving the inflation of
        any tire mounted on a rim equipped with a
        removable retaining ring.

16.  WORK IN CONNECTION WITH RIDING
     INSIDE PASSENGER COMPARTMENTS OF
     MOTOR VEHICLES except as prohibited on
     page 5 of this guide or when a significant reason
     for the minor being a passenger in the vehicle is
     for the purpose of performing work in connection
     with the transporting—or assisting in the
     transporting of—other persons or property.  Each
     minor riding as a passenger in a motor vehicle
     must have his or her own seat in the passenger
     compartment; each seat must be equipped with a
     seat belt or similar restraining device; and the
     employer must instruct the minors that such belts
     or other devices must be used.  In addition, each
     driver transporting the young workers must hold a
     valid state driver's license for the type of vehicle
     being driven and, if the driver is under the age of
     18, his or her employment must comply with the
     provisions of HO 2 (*see* page 10 of this guide).

## Work Experience and Career Exploration Programs (WECEP)

Some of the provisions of Child Labor Regulation No. 3 are varied for 14- and 15-year-old participants in approved school-supervised and school-administered WECEPs.  Enrollees in WECEP may be employed:

-  During school hours.
-  For as many as 3 hours on a school day, including Fridays.
-  For as many as 23 hours in a school week.
-  In occupations otherwise prohibited but only after a specific variance has been granted by the Administrator of the Wage and Hour Division.

The state educational agency must obtain approval from the Administrator of the Wage and Hour Division before operating a WECEP program.

## Work-Study Program (WSP)

Some of the hours standards provisions of Child Labor Regulation No. 3 are varied for certain 14- and 15-year-old students participating in a Department of Labor approved school-supervised and school administered WSP.  Participating students must be enrolled in a college preparatory curriculum and identified by authoritative personnel of the school as being able to benefit from the WSP.

Employment of students in an authorized WSP shall be confined to not more than 18 hours in any one week when school is in session, a portion of which may be during school hours, in accordance with the following formula that is based upon a continuous four-week cycle.  In three of the four weeks, the participant is permitted to work during school hours on only one day per week, and for no more than for eight hours on that day.  During the remaining week of the four-week cycle, such minor is permitted to work during school hours on no more than two days, and for no more than for eight hours on each of those two days.  The employment of such minors would still be subject to the remaining time of day and number of hours standards contained Child Labor Regulation No. 3 and discussed on page 6 of this guide .

7

# Employment Standards for 16- and 17-Year-Olds in Nonagricultural Employment

## The Hazardous Occupations Orders (HOs) for Nonagricultural Employment

These Orders are published in Subpart E of Part 570 of Title 29 of the Code of Federal Regulations.

The FLSA provides a minimum age of 18 years for any nonagricultural occupations which the Secretary of Labor "shall find and by order declare" to be particularly hazardous for 16- and 17-year-old persons, or detrimental to their health and well-being.  This minimum age applies even when the minor is employed by the parent or person standing in place of the parent.

The seventeen HOs apply either on an industry basis, specifying the occupations in the industry that are not permitted, or an occupational basis irrespective of the industry in which found.  Some of the HOs contain limited exemptions.

HO 1   Manufacturing and storing of explosives.

HO 2   Motor-vehicle driving and outside helper on a motor vehicle.

HO 3   Coal mining.

HO 4   Occupations in forest fire fighting, forest fire prevention, timber tract operations, forestry service, logging, and sawmilling.

HO 5*   Power-driven woodworking machines.

HO 6   Exposure to radioactive substances.

HO 7   Power-driven hoisting apparatus, including forklifts.

HO 8*   Power-driven metal-forming, punching, and shearing machines.

HO 9   Mining, other than coal mining.

HO 10*   Operating power-driven meat processing equipment, including **meat slicers and other food slicers**, in retail establishments (such as grocery stores, restaurants kitchens and delis) and wholesale establishments, and most occupations in meat and poultry slaughtering, packing, processing, or rendering.

HO 11   Power-driven bakery machines including vertical dough or batter mixers.

HO 12*   Power-driven balers, compactors, and paper processing machines.

HO 13   Manufacturing bricks, tile, and kindred products.

HO 14*   Power-driven circular saws, bandsaws, chain saws, guillotine shears, wood chippers, and abrasive cutting discs.

HO 15   Wrecking, demolition, and shipbreaking operations.

HO 16*   Roofing operations and all work on or about a roof.

HO 17*   Excavation operations.

*These HOs provide limited exemptions for 16- and 17-year-olds who are bona-fide student-learners and apprentices.*

8

## HO 1 - Manufacturing or Storage Occupations Involving Explosives

The following occupations in or about plants or establishments manufacturing or storing explosives or articles containing explosive components are prohibited:

1. All occupations in or about any plant or establishment (other than retail establishments or plants or establishments of the type described in subparagraph 2. below) manufacturing or storing explosives or articles containing explosive components *except* where the occupation is performed in a "nonexplosives area" as defined in subparagraph 3. below.
2. The following occupations in or about any plant or establishment manufacturing or storing small arms ammunition not exceeding .60 caliber in size, shotgun shells, or blasting caps when manufactured or stored in conjunction with the manufacture of small arms ammunition:
   a. All occupations involved in the manufacturing, mixing, transporting, or handling of explosive compounds in the manufacture of small arms ammunition and all other occupations requiring the performance of any duties in the explosives area in which explosive compounds are manufactured or mixed.
   b. All occupations involving the manufacturing, transporting, or handling of primers and all other occupations requiring the performance of any duties in the same building in which primers are manufactured.
   c. All occupations involved in the priming of cartridges and all other occupations requiring the performance of any duties in the same workroom in which rimfire cartridges are primed.
   d. All occupations involved in the plate loading of cartridges and in the operation of automatic loading machines.
   e. All occupations involved in the loading, inspecting, packing, shipping, and storage of blasting caps.

*Definitions*

1. The term *plant or establishment manufacturing or storing explosives or articles containing explosive components* means the land with all the buildings and other structures thereon used in connection with the manufacturing or processing or storing of explosives or articles containing explosive components.
2. The terms *explosives* and *articles containing explosive components* mean and include ammunition, black powder, blasting caps, fireworks, high explosives, primers, smokeless powder, and all explosives and explosive materials as defined in 18 U.S.C. 841(c)-(f) and the implementing regulations at 27 CFR Part 555. The terms included any chemical compound, mixture, or device, the primary or common purpose of which is to function by explosion, as well as all goods identified in the most recent list of explosive materials published by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice.  This list may be found through the ATF website at http://www.atf.gov.
3. An area meeting the following criteria shall be deemed a *nonexplosives area*:
   a. None of the work performed in the area involves the handling or use of explosives;
   b. The area is separated from the explosives area by a distance not less than that prescribed in the American Table of Distances for the protection of inhabited buildings;
   c. The area is separated from the explosives area by a fence or is otherwise located so that it constitutes a definite designated area; and
   d. Satisfactory controls have been established to prevent employees under 18 years of age within the area from entering any area in or about the plant which does not meet criteria a through c.

## HO 2 – Motor-Vehicle Occupations

The occupation of motor-vehicle driver and outside helper on any public road, highway, in or about any mine (including open pit mine or quarry), place where logging or sawmill operations are in progress, or in any excavation of the type identified in HO 17 are prohibited for minors between 16 and 18 years of age *except* that 17-year-olds may drive automobiles and trucks on an incidental and occasional basis if all of the criteria listed in the following exemption are met.

### Limited exemption from HO 2 for 17 year old employees:

Seventeen-year-olds, but no one under 17 years of age, may drive automobiles and trucks on public roads as part of their employment on an occasional and incidental basis if all the following requirements are met:

- the automobile or truck does not exceed 6,000 pounds gross vehicle weight;
- the driving is limited to daylight hours;
- the 17-year-old holds a state license valid for the type of driving involved;
- the 17-year-old has successfully completed a state-approved driver education course and has no record of any moving violations at the time of hire;
- the driving takes place within a thirty (30) mile radius of the minor's place of employment;
- the automobile or truck is equipped with a seat belt for the driver and any passengers and the employer has instructed the youth that the seat belts must be used when driving the vehicle;
- the driving may not involve:
  - towing vehicles;
  - route deliveries or route sales;
  - transportation for hire of property, goods, or passengers;
  - urgent, time-sensitive deliveries;
  - transporting more than three passengers, including employees of the employer;
  - more than two trips away from the primary place of employment in any single day to deliver the employer's goods to a customer (other than urgent, time-sensitive deliveries which are prohibited);
  - more than two trips away from the primary place of employment in any single day to transport passengers, other than employees of the employer.

*Definitions*

1. The term *motor vehicle* shall mean any automobile, truck, truck tractor, trailer, semitrailer, motorcycle, or similar vehicle propelled or drawn by mechanical power and designed for use as a means of transportation but shall not include any vehicle operated exclusively on rails.

2. The term *driver* shall mean any individual who in the course of employment drives a motor vehicle at any time.

3. The term *outside helper* shall mean any individual, other than a driver, whose work includes riding on a motor vehicle outside the cab for the purpose of assisting in transporting or delivering goods.

4. The term *gross vehicle weight* includes the truck chassis with lubricants, water, and full tank or tanks of fuel, plus the weight of the cab or driver's compartment, body, and special chassis and body equipment, and payload.

5. The term *urgent, time-sensitive deliveries* shall mean trips which, because of such factors as customer satisfaction, the rapid deterioration of the quality or change in temperature of the product, and/or economic incentives, are subject to timelines, schedules, and/or turnaround times which might impel the driver to hurry in the completion of the delivery.  Prohibited trips would include, but are not limited to, the delivery of pizzas and prepared foods to the customer; the delivery of materials under a deadline (such as deposits to a bank at closing); and the shuttling of passengers to and from transportation depots to meet transport schedules.  *Urgent, time-sensitive deliveries* do not depend on the delivery's points of origin and termination, and include the delivery of people and things *to* the employer's place of business as well as *from* that business to some other location.

6. The term *occasional and incidental* shall mean no more than one-third of the 17-year-old driver's worktime in any workday and no more than 20 percent of the 17-year-old driver's worktime in any workweek.

10

## HO 3 - Coal Mining Occupations

All occupations in or about any coal mine are prohibited *except* the occupations of slate or other refuse picking at a picking table or picking chute in a tipple or breaker and occupations requiring the performance of duties solely in offices or in repair or maintenance shops located in the surface part of any coal mining plant.

*Definitions*

1. The term *coal* shall mean any rank of coal, including lignite, bituminous, and anthracite coals.
2. The term *all occupations in or about any coal mine* shall mean all types of work performed in any underground working, open pit, or surface part of any coal mining plant that contributes to the extraction, grading, cleaning, or other handling of coal.

## HO 4 - Forest fire fighting and forest fire prevention occupations, timber tract occupations, forestry service occupations, logging occupations, and occupations in the operation of any sawmill, lath mill, shingle mill, or cooperage stock mill (Order 4).

All occupations in forest fire fighting and forest fire prevention, in timber tracts, in forestry services, logging, and the operation of any sawmill, lath mill, shingle mill, or cooperage stock mill are particularly hazardous for the employment of minors between 16 and 18 years of age, *except* the following when not prohibited by any other section of  Subpart E of 29 CFR 570:

1. Work in offices or in repair or maintenance shops.
2. Work in the construction, operation, repair, or maintenance of living and administrative quarters, including logging camps and fire fighting base camps.
3. Work in the repair or maintenance of roads, railroads or flumes and work in construction and maintenance of telephone lines, but only if the minors are not engaged in the operation of power-driven machinery, the handling or use of explosives, the felling or bucking of timber, the collecting or transporting of logs, or work on trestles.
4. The following tasks in forest fire prevention *provided* none of these tasks may be performed in conjunction with or in support of efforts to extinguish a forest fire:  the clearing of fire trails or roads; the construction, maintenance, and patrolling of fire lines; the piling and burning of slash; the maintaining of fire fighting equipment; and acting as a fire lookout or fire patrolman.
5. Work related to forest marketing and forest economics when performed away from the forest.
6. Work in the feeding or care of animals.
7. Peeling of fence posts, pulpwood, chemical wood, excelsior wood, cordwood, or similar products, when not done in conjunction with and at the same time and place as other logging occupations declared hazardous by this HO.
8. The following additional exceptions apply to the operation of a permanent sawmill or the operation of any lath mill, shingle mill, or cooperage stock mill, but not to a portable sawmill.  In addition, the following exceptions do not apply to work which entails entering the sawmill building, except for those minors whose employment meets the requirements of the limited exemptions discussed in Regulations 29 CFR Part 570, sections 570.34(m) and 570.54(c) (*see Exception* section below):
   a. Straightening, marking, or tallying lumber on the dry chain or the dry drop sorter.
   b. Pulling lumber from the dry chain, *except* minors under 16 years of age may not pull lumber from the dry chain as such youth are prohibited from operating or tending power-driven machinery by the occupations standards contained in Child Labor Regulation No. 3.
   c. Clean-up in the lumberyard.
   d. Piling, handling, or shipping of cooperage stock in yards or storage sheds other than operating or assisting in the operation of power-driven equipment; *except* minors under 16 years of age may not perform shipping duties as they are prohibited from employment in occupations in connection with the transportation of property by rail, highway, air, water, pipeline, or other means by the occupations standards contained in Child Labor Regulation No. 3.
   e. Clerical work in yards or shipping sheds, such as done by ordermen, tally-men, and shipping clerks.
   f. Clean-up work outside shake and shingle mills, except when the mill is in operation.
   g. Splitting shakes manually from precut and split blocks with a froe and mallet, except inside the mill building or cover.
   h. Packing shakes into bundles when done in conjunction with splitting shakes manually

11

with a froe and mallet, except inside the mill building or cover.

i. Manual loading of bundles of shingles or shakes into trucks or railroad cars, provided that the employer has on file a statement from a licensed doctor of medicine or osteopathy certifying the minor capable of performing this work without injury to himself, *except* minors under 16 years of age may not load bundles of shingles or shakes into trucks or railroad cars as they are prohibited from loading and unloading goods or property onto or from motor vehicles, railroad cars, or conveyors by the occupations standards contained in Child Labor Regulation No. 3.

*Exemption*

The provisions contained in paragraph 8 above that prohibit youth between 16 and 18 years of age from performing any work that entails entering the sawmill building do not apply to the employment of a youth who is at least 14 years of age and less than 18 years of age and who by statute or judicial order is exempt from compulsory school attendance beyond the eighth grade, if:

1. the youth is supervised by an adult relative or by an adult member of the same religious sect or division as the youth;
2. the youth does not operate or assist in the operation of power-driven woodworking machines;
3. the youth is protected from wood particles or other flying debris within the workplace by a barrier appropriate to the potential hazard of such wood particles or flying debris or by maintaining a sufficient distance from machinery in operation; and
4. the youth is required to use, and uses, personal protective equipment to prevent exposure to excessive levels of noise and saw dust.

Compliance with the provisions of paragraphs 3 and 4 above will be accomplished when the employer is in compliance with the requirements of the applicable governing standards issued by the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA) or, in those areas where OSHA has authorized the state to operate its own Occupational Safety and Health Plan, the applicable standards issued by the Office charged with administering the state occupational safety and health plan.

*Definitions.*

1. The term *all occupations in forest fire fighting and forest fire prevention* shall include the controlling and extinguishing of fires, the wetting down of areas or extinguishing of spot fires, and the patrolling of burned areas to assure the fire has been extinguished.  The term shall also include the following tasks when performed in conjunction with, or in support of, efforts to extinguish a forest fire:  the piling and burning of slash; the clearing of fire trails or roads; the construction, maintenance, and patrolling of fire lines; acting as a fire lookout or fire patrolman; and the maintaining of fire fighting equipment.  The prohibition concerning the employment of youth in forest fire fighting and fire prevention applies to all forest and timber tract locations, logging operations, and sawmill operations, including all buildings located within such areas.
2. The term *all occupations in forestry services* shall mean all work involved in the support of timber production, wood technology, forestry economics and marketing, and forest protection.  The term includes such services as timber cruising, surveying, or logging-engineering parties; estimating timber; timber valuation; forest pest control; forest fire fighting and forest fire prevention as defined in this section; and reforestation.  The term shall not include work in forest nurseries, establishments primarily engaged in growing trees for purposes of reforestation. The term shall not include the gathering of forest products such as balsam needles, ginseng, huckleberry greens, maple sap, moss, Spanish moss, sphagnum moss, teaberries, and tree seeds; the distillation of gum, turpentine, and rosin if carried on at the gum farm; and the extraction of pine gum.
3. The term *all occupations in logging* shall mean all work performed in connection with the felling of timber; the bucking or converting of timber into logs, poles, piles, ties, bolts, pulpwood, chemical wood, excelsior wood, cordwood, fence posts, or similar products; the collecting, skidding, yarding, loading, transporting and unloading of such products in connection with logging; the constructing, repairing and maintaining of roads, railroads, flumes, or camps used in connection with logging; the moving, installing, rigging, and maintenance of machinery or equipment used in logging; and other work performed in connection with logging.
4. The term *all occupations in the operation of any sawmill, lath mill, shingle mill, or cooperage-stock mill* shall mean all work performed in or

about any such mill in connection with storing of logs and bolts; converting logs or bolts into sawn lumber, lathers, shingles, or cooperage stock; storing drying, and shipping lumber, laths, shingles, cooperage stock, or other products of such mills; and other work performed in connection with the operation of any sawmill, lath mill, shingle mill, or cooperage-stock mill.  The term shall not include work performed in the planing-mill department or other remanufacturing departments of any sawmill or remanufacturing plant not a part of a sawmill.

5.  The term *all occupations in timber tracts* means all work performed in or about establishments that cultivate, manage or sell standing timber.  The term includes work performed in timber culture, timber tracts, timber-stand improvement, and forest fire fighting and fire prevention.  It includes work on tree farms, except those tree farm establishments that meet the definition of agriculture contained in section 3(f) of the FLSA.

6.  The term *inside or outside places of business* shall mean the actual physical location of the establishment employing the youth, including the buildings and surrounding land necessary to the business operations of that establishment.

7.  The term *operate or assist in the operation of power-driven woodworking machines* includes operating such machines, including supervising or controlling the operation of such machines, feeding material into such machines, helping the operator feed material into such machines, unloading materials from such machines, and helping the operator unload materials from such machines.  The term also includes the occupations of setting-up, adjusting, repairing, oiling, or cleaning such machines.

8.  The term *places of business where machinery is used to process wood products* shall mean such permanent workplaces as sawmills, lath mills, shingle mills, cooperage stock mills, furniture and cabinet making shops, gazebo and shed making shops, toy manufacturing shops, and pallet shops.  The term shall not include construction sites, portable sawmills, areas where logging is being performed, or mining operations.

9.  The term *portable sawmill* shall mean a sawmilling operation where no office or repair or maintenance shop is ordinarily maintained, and any lumberyard operated in conjunction with the sawmill is used only for the temporary storage of green lumber.

10.  The term *power-driven woodworking machines* shall mean all fixed or portable machines or tools driven by power and used or designed for cutting, shaping, forming, surfacing, nailing, stapling, wire stitching, fastening or otherwise assembling, pressing or printing wood, veneer, trees, logs, or lumber.

11.  The term *remanufacturing department* shall mean those departments of a sawmill where lumber products such as boxes, lawn furniture, and the like are remanufactured from previously cut lumber.  The kind of work performed in such departments is similar to that done in planing mill departments in that rough lumber is surfaced or made into other finished products.  The term is not intended to denote those operations in sawmills where rough lumber is cut to dimensions.

12.  The term *supervised by an adult relative or is supervised by an adult member of the same religious sect or division as the youth* has several components.

    a.  *Supervised* refers to the requirement that the youth's on-the-job activities be directed, monitored, and controlled by certain named adults.  Such supervision must be close, direct, constant and uninterrupted.

    b.  *Adult* shall mean an individual who is at least eighteen years of age.

    c.  *Relative* shall mean the parent (or someone standing in place of a parent), grandparent, sibling, uncle, or aunt of the young worker.

    d.  *Member of the same religious sect or division as the youth* refers to an individual who professes membership in the same religious sect or division to which the youth professes membership.

13

## HO 5 - Power-Driven Woodworking Machine Occupations

The following occupations involved in the operation of power-driven woodworking machines are prohibited:

1. The occupation of operating power-driven woodworking machines including supervising or controlling the operation of such machines, feeding material into such machines, and helping the operator to feed material into such machines, but not including the placing of material on a moving chain or in a hopper or slide for automatic feeding.
2. The occupations of setting up, adjusting, repairing, oiling, or cleaning power-driven woodworking machines.
3. The operations of off-bearing from circular saws and from guillotine-action veneer clippers.

*Exemption*

The exemption for student-learners and apprentices applies to HO 5.

*Definitions*

1. *Off-bearing* shall mean the removal of material or refuse directly from a saw table or from the point of operation.  Operations not considered as off-bearing within the intent of this section include:
   a. The removal of material or refuse from a circular saw or guillotine-action veneer clipper where the material or refuse has been conveyed away from the saw table or point of operation by a gravity chute or by some mechanical means such as a moving belt or expulsion roller; and
   b. The following operations when they do not involve the removal of materials or refuse directly from a saw table or point of operation:  The carrying, moving, or transporting of materials from one machine to another or from one part of a plant to another; the piling, stacking, or arranging of materials for feeding into a machine by another person; and the sorting, tying, bundling, or loading of materials.
2. *Power-driven woodworking machines* shall mean all fixed or portable machines or tools driven by power and used or designed for cutting, shaping, forming, surfacing, nailing, stapling, wire stitching, fastening or otherwise assembling, pressing or printing wood, veneer, trees, logs, or lumber.

## HO 6 - Occupations Involving Exposure to Radioactive Substances and to Ionizing Radiation

The following occupations are prohibited:
1. Any work in any workroom in which:
   a. radium is stored or used in the manufacture of self-luminous compound;
   b. self-luminous compound is made, processed, or packaged;
   c. self-luminous compound is stored, used, or worked upon;
   d. incandescent mantles are made from fabric and solutions containing thorium salts, or are processed or packaged;
   e. other radioactive substances are present in the air in average concentrations exceeding 10 percent of the maximum permissible concentrations in the air recommended for occupations exposure by the National Committee on Radiation Protection, as set forth in the 40-hour week column of Table One of the National Bureau of Standards Handbook No. 69 entitled *Maximum Permissible Body Burdens and Maximum Permissible Concentrations of Radionuclides in Air and In Water for Occupational Exposure* issued June 5, 1959.
2. Any other work which involves exposure to ionizing radiations in excess of 0.5 rem per year.

*Definitions*

1. The term *self-luminous compound* shall mean any mixture of phosphorescent material and radium, mesothorium, or other radioactive element.
2. The term *workroom* shall include the entire area bounded by walls of solid material and extending from floor to ceiling.
3. The term *ionizing radiations* shall mean alpha and beta particles, electrons, protons, neutrons, gamma, and X-ray and all other radiations which produce ionizations directly or indirectly, but does not include electromagnetic radiations other than gamma and X-ray.

## HO 7 - Power-Driven Hoisting Apparatus Occupations

The following occupations involved in the operation of power-driven hoisting apparatus are particularly hazardous for minors between 16 and 18 years of age:

1. Work of operating, tending, riding upon, working from, repairing, servicing, or disassembling an elevator, crane, derrick, hoist, or high-lift truck, except operating or riding inside an unattended automatic operation passenger elevator.  Tending such equipment includes assisting in the hoisting tasks being performed by the equipment.
2. Work of operating, tending, riding upon, working from, repairing, servicing, or disassembling a manlift or freight elevator, except 16- and 17-year-olds may ride upon a freight elevator operated by an assigned operator.  Tending such equipment includes assisting in the hoisting tasks being performed by the equipment.

*Exemption*

HO 7 does not prohibit the operation of an automatic elevator and an automatic signal operation elevator provided that the exposed portion of the car interior (exclusive of vents and other necessary small openings), the car door, and the hoistway doors are constructed of solid surfaces without any opening through which a part of the body may extend; all hoistway openings at floor level have doors which are interlocked with the car door so as to prevent the car from starting until all such doors are closed and locked; the elevator (other than hydraulic elevators) is equipped with a device which will stop and hold the car in case of overspeed or if the cable slackens or breaks; and the elevator is equipped with upper and lower travel limit devices which will normally bring the car to rest at either terminal and a final limit switch which will prevent the movement in either direction and will open in case of excessive overtravel by the car.[2]

---

[2]  For purposes of this exception the term *automatic elevator* shall mean a passenger elevator, a freight elevator or a combination passenger-freight elevator, the operation of which is controlled by pushbuttons in such a manner that the starting, going to the landing selected, leveling and holding, and the opening and closing of the car and hoistway doors are entirely automatic.  The term *automatic signal operation elevator* shall mean an elevator which is started in response to the operation of a switch (such as a lever or pushbutton) in the car which when operated by the operator actuates a starting device that automatically closes the car and hoistway doors – from this point on, the movement of the car to the landing selected, leveling and holding when it gets there, and the opening of the car and hoistway doors are entirely automatic.

*Definitions*

1. *Crane* shall mean a power-driven machine for lifting and lowering a load and moving it horizontally, in which the hoisting mechanism is an integral part of the machine.  The term shall include all types of cranes, such as cantilever gantry, crawler, gantry, hammerhead, ingot pouring, jib, locomotive, motor-truck, overhead traveling, pillar jib, pintle, portal, semi-gantry, semi-portal, storage bridge, tower, walking jib, and wall cranes.
2. *Derrick* shall mean a power-driven apparatus consisting of a mast or equivalent members held at the top by guys or braces, with or without a boom, for use with a hoisting mechanism or operating ropes.  The term shall include all types of derricks, such as A-frame, breast, Chicago boom, gin-pole, guy, and stiff-leg derrick.
3. *Elevator* shall mean any power-driven hoisting or lowering mechanism equipped with a car or platform which moves in guides in a substantially vertical direction.  The term shall include both passenger and freight elevators (including portable elevators or tiering machines), but shall not include dumbwaiters.
4. *High-lift truck* shall mean a power-driven industrial type of truck used for lateral transportation that is equipped with a power-operated lifting device usually in the form of a fork or platform capable of tiering loaded pallets or skids one above the other.  Instead of a fork or a platform, the lifting device may consist of a ram, scoop, shovel, crane, revolving fork, or other attachments for handling specific loads.  The term shall mean and include highlift trucks known under such names as fork lifts, fork trucks, fork lift trucks, tiering trucks, backhoes, front-end loaders, skid loaders, skid-steer loaders, or stacking trucks, but shall not mean low-lift trucks or low-lift platform trucks that are designed for the transportation of but not the tiering of materials.
5. *Hoist* shall mean a power-driven apparatus for raising or lowering a load by the application of a pulling force that does not include a car or platform running in guides.  The term shall include all types of hoists, such as base mounted electric, clevis suspension, hook suspension, monorail, overhead electric, simple drum, and trolley suspension hoists.
6. *Manlift* shall mean a device intended for the conveyance of persons that consists of platforms

or brackets mounted on, or attached to, an endless belt, cable, chain or similar method of suspension; with such belt, cable or chain operating in a substantially vertical direction and being supported by and driven through pulleys, sheaves or sprockets at the top and bottom.  The term shall also include truck- or equipment-mounted aerial platforms commonly referred to as scissor lifts, boom-type mobile elevating work platforms, work assist vehicles, cherry pickers, basket hoists, and bucket trucks.

## HO 8 - Power-Driven Metal Forming, Punching, and Shearing Machine Occupations

The following occupations are prohibited:

1.  The occupations of operator of or helper on the following power-driven metal forming, punching, and shearing machines:
    a.  All rolling machines, such as beading, straightening, corrugating, flanging, or bending rolls; and hot or cold rolling mills.
    b.  All pressing or punching machines, such as punch presses *except* those provided with full automatic feed and ejection and with a fixed barrier guard to prevent the hands or fingers of the operator from entering the areas between the dies; power presses; and plate punches.
    c.  All bending machines, such as apron brakes and press brakes.
    d.  All hammering machines, such as drop hammers and power hammers.
    e.  All shearing machines, such as guillotine or squaring shears; alligator shears; and rotary shears.
2.  The occupations of setting-up, adjusting, repairing, oiling, or cleaning these machines including those with automatic feed and ejection.

*Exemption*

The exemption for student-learners and apprentices applies to HO 8.

*Definitions*

1.  The term *operator* shall mean a person who operates a machine covered by this HO by performing such functions as starting or stopping the machine, placing materials into or removing them from the machine, or any other functions directly involved in the operation of the machine.

2.  The term *helper* shall mean a person who assists in the operation of a machine covered by the HO by helping place materials into or removing them from the machine.
3.  The term *forming, punching, and shearing* shall mean power-driven metalworking machines, other than machine tools, which change the shape of or cut metal by means of tools, such as dies, rolls, or knives which are mounted on rams, plungers, or other moving parts.  Types of forming, punching and shearing machines enumerated in this section are the machines to which the designation is by custom applied.  Not included in this term are metalworking machines known as *machine tools*.
4.  The term *machine tools* shall mean power-driven complete metalworking machines having one or more tool- or work-holding devices and used for progressively removing metal in the form of "chips."  Since the HO does not apply to machine tools, the 18-year minimum age does not apply.  The following is a list of common machine tools:

Milling Function Machines
   Horizontal Milling Machines
   Vertical Milling Machines
   Universal Milling Machines
   Planer-type Milling Machines
  Gear   Hobbing Machines
   Pro filers
   R outers

Turning Function Machines
   Engi ne Lathes
   Turret  Lathes
   Ho llow Spindle Lathes
   Au tomatic Lathes
   Automatic Screw Machines

Planing Function Machines
   Planers
   Shapers
   Slotters
   Broaches
   Keycas ters
   Hack  Saws

Grinding Function Machines
   Grinders
   Abrasive Wheels
   Abrasive Belts
   Abrasive Disks
   Abrasive Points
   Polishing Wheels
   Buffing Wheels
   Stroppers
   Lapping Machines

16

Boring Function Machines
    Vertical Boring Mills
    Horizontal Boring Mills
    Jig Borers
    Pedestal Drills
    Radial Drills
    Gang Drills
    Upright Drills
    Drill Presses
    Centering Machines
    Reamers
    Honers

## HO 9 - Occupations in Connection with Mining, Other than Coal

All occupations in connection with mining, other than coal (see HO 3), are prohibited *except* the following:

1. Work in offices, in the warehouse or supply house, in the change house, in the laboratory, and in repair or maintenance shops not located underground.
2. Work in the operation and maintenance of living quarters.
3. Work outside the mine in surveying, in the repair and maintenance of roads, and in general cleanup about the mine property such as clearing brush and digging drainage ditches.
4. Work of track crews in the building and maintaining of sections of railroad track located in those areas of opencut metal mines where mining and haulage activities are not being conducted at the time and place that such building and maintenance work is being done.
5. Work in or about surface placer mining operations other than placer dredging operations and hydraulic placer mining operations.
6. The following work in metal mills other than in mercury-recovery mills or mills using the cyanide process:
   a. Work involving the operation of jigs, sludge tables, flotation cells, or drier-filters.
   b. Work of handsorting at picking table or picking belt.
   c. General cleanup work.

*Provided, however,* that nothing in this section shall be construed as permitting employment of minors in any occupation prohibited by any other HO issued by the Secretary of Labor.

*Definitions*

The term *all occupations in connection with mining, other than coal* shall mean all work performed:
- underground in mines and quarries;
- on the surface at underground mines and underground quarries;
- in or about opencut mines, open quarries, clay pits, and sand and gravel operations;
- at or about placer mining operations;
- at or about dredging operations for clay, sand, or gravel; at or about borehole mining operations;
- in or about all metal mills, washer plants, or grinding mills reducing the bulk of the extracted minerals; and
- at or about any other crushing, grinding, screening, sizing, washing, or cleaning operations performed upon the extracted minerals *except* where such operations are performed as part of a manufacturing process.

The term shall not include work performed in subsequent manufacturing or processing operations, such as work performed in smelters, electro-metallurgical plants, refineries, reduction plants, cement mills, plants where quarried stone is cut, sanded, and further processed, or plants manufacturing clay, glass, or ceramic products.  Neither shall the term include work performed in connection with coal mining, in petroleum production, in natural-gas production, nor in dredging operations which are not a part of mining operations, such as dredging for construction or navigation purposes.

## HO 10 - Occupations in the Operation of Power-Driven Meat-Processing Machines and Occupations Involving Slaughtering, Meat and Poultry Packing, Processing, or Rendering

The following occupations in retail establishments, wholesale establishments, service establishments, slaughtering and meatpacking establishments, or rendering plants are prohibited:

1. All occupations involved in the operation or feeding of the following power-driven machines, including setting-up, adjusting, repairing, oiling, or cleaning such machines, regardless of the product being processed by these machines (including, for example, the slicing in a retail delicatessen of meat, poultry, seafood, bread, vegetables, or cheese, etc.):  meat slicers, meat patty forming machines, meat and bone cutting saws, knives (*except* bacon-slicing machines[3]).

2. All occupations involved in the operation or feeding of the following power-driven machines, including setting-up, adjusting, repairing, or oiling such machines or the cleaning of such machines or the individual parts or attachments of such machines, regardless of the product being processed by these machines:  headsplitters, and guillotine cutters; snoutpullers and jawpullers; skinning machines; horizontal rotary washing machines; casing-cleaning machines such as crushing, stripping, and finishing machines; grinding, mixing, chopping, and hashing machines; and presses (except belly-rolling machines).  *Except*, the provisions of this subsection shall not apply to the operation of those lightweight, small capacity, portable, countertop mixers discussed in HO 11 when used as a mixer to process materials other than meat or poultry.

3. All boning operations.

4. All operations on the killing floor, in curing cellars, and in hide cellars, *except* the work of messengers, runners, handtruckers, and similar occupations which require entering such workrooms or workplaces infrequently and for short periods of time.

5. All occupations involved in the recovery of lard and oils, *except* packaging and shipping of such products and the operations of lard-roll machines.

6. All occupations involved in tankage or rendering of dead animals, animal offal, animal fats, scrap meats, blood, and bones into stockfeeds, tallow, inedible greases, fertilizer ingredients, and similar products.

7. All occupations involving the handlifting or handcarrying of any carcass or half carcass of beef, pork, horse, deer, or buffalo, or any quarter carcass of beef, horse, or buffalo.

8. All occupations involving hand-lifting or hand-carrying any carcass or half-carcass of beef, pork, or horse, or any quarter-carcass of beef or horse.

*Exemptions*

The exemption for student-learners and apprentices applies to HO 10.

HO 10 shall not apply to the killing and processing of rabbits or small game in areas physically separated from the killing floor.

*Definitions*

1. The term *boning occupations* means the removal of bones from meat cuts.  It does not include work that involves cutting, scraping, or trimming meat from cuts containing bones.

2. The term *curing cellar* includes a workroom or workplace which is primarily devoted to the preservation and flavoring of meat, including poultry, by curing materials.  It does not include a workroom or workplace solely where meats are smoked.

3. The term *hide cellar* includes a workroom or workplace where hides are graded, trimmed, salted, and otherwise cured.

4. The term *killing floor* includes a workroom, workplace where such animals as cattle, calves, hogs, poultry, sheep, lambs, goats, buffalo, deer, or horses are immobilized, shackled, or killed, and the carcasses are dressed prior to chilling.

5. The term *retail/wholesale or service establishments* include establishments where meat or meat products, including poultry, are processed or handled, such as butcher shops, grocery stores, restaurants and quick service food establishments, hotels, delicatessens, and meat locker (freezer-locker) companies, and establishments where any food product is prepared or processed for serving to customers using machines prohibited by paragraph (a) of this HO.

---

[3] The term *bacon slicing machine* as used in this HO refers to those machines which are designed solely for the purpose of slicing bacon and are equipped with enclosure or barrier guards that prevent the operator from coming in contact with the blade or blades, and with devices for automatic feeding, slicing, shingling, stacking, and conveying the sliced bacon away from the point of operation.

18

6. The term *rendering plants* means establishments engaged in the conversion of dead animals, animal offal, animal fats, scrap meats, blood, and bones into stock feeds, tallow, inedible greases, fertilizer ingredients, and similar products.

7. The term *slaughtering and meat packing establishments* means places in or about which such animals as cattle, calves, hogs, poultry, sheep, lambs, goats, buffalo, deer, or horses are killed, butchered, or processed.  The term also includes establishments which manufacture or process meat or poultry products, including sausage or sausage casings from such animals.

## HO 11 - Power-Driven Bakery Machine Occupations

The following occupations involved in the operation of power-driven bakery machines, no matter where performed, are prohibited:

1. The occupations of operating, assisting to operate, or setting-up, adjusting, repairing, oiling, or cleaning any horizontal or vertical doughmixer; battermixer[4]; bread dividing, rounding, or molding machine; doughbrake; doughsheeter; combination breadslicing and wrapping machine; or cake-cutting bandsaw.

2. The occupation of setting-up or adjusting a cookie or cracker machine.

*Exemptions*

1. This HO shall not apply to the operation, including the setting up, adjusting, repairing, oiling and cleaning, of lightweight, small capacity, portable counter-top power-driven food mixers that are, or are comparable to, models intended for household use.  For purposes of this exemption, a lightweight, small capacity mixer is one that is not hardwired into the establishment's power source, is equipped with a motor that operates at no more than ½ horsepower, and is equipped with a bowl with a capacity of no more than five quarts. *Except*, this exception shall not apply when the mixer is used, with or without attachments, to

process meat or poultry products as prohibited by HO 10.

2. This HO shall not apply to the operation of pizza-dough rollers, a type of dough sheeter, that:  have been constructed with safeguards contained in the basic design so as to prevent fingers, hands, or clothing from being caught in the in-running point of the rollers; have gears that are completely enclosed; and have microswitches that disengage the machinery if the backs or sides of the rollers are removed.  This exception applies only when all the safeguards detailed in this paragraph are present on the machine, are operational, and have not been overridden.  This exception does not apply to the setting up, adjusting, repairing, oiling or cleaning of such pizza-dough rollers.

HO 11 does not apply to the following list of bakery machines which may be operated by 16- and 17-year-olds minors:

Ingredient Preparation and Mixing
    Flour-sifting Machine Operator
    Flour-blending Machine Operator
    Sack-cleaning Machine Operator

Product Forming and Shaping
    Roll-dividing Machine Operator
    Roll-making Machine Operator
    Batter-sealing Machine Operator
    Depositing Machine Operator
    Cookie or Cracker Machine Operator
    Wafer Machine Operator
    Pretzel-stick Machine Operator
    Pi  edough Rolling Machine Operator
    Piedough Sealing Machine Operator
    Pie-crimping Machine Operator

Finishing and Icing
    Depositing Machine Operator
    Enrobing Machine Operator
    Spray Machine Operator
    Icing Mixing Machine Operator

Slicing and Wrapping
    Roll Slicing and Wrapping Machine
      Operator
    Cake Wrapping Machine Operator
    Carton Packing and Sealing Machine
      Operator

Panwashing
    Spray-type Panwashing Machine Operator
    Tumbler-type Panwashing Machine
      Operator

---

[4] HO 11 prohibits minors from operating any vertical or horizontal mixer (except lightweight, portable, countertop models discussed in the exemption) when used to mix dough, batter, and items such as vegetables, meat mixtures and other heavier products that require the use of the same strength or design of agitators, whips, or beaters as those used to mix dough or batter.  HO 11 does not prohibit minors from using such equipment to mix lighter fare such as meringues and light icings when the agitators or whips used are designed solely for such use.

## HO 12 - Occupations involved in the operation of balers, compactors, and paper-products machines

The following occupations are prohibited in any type of establishment (manufacturing, nonmanufacturing, retail, wholesale, service, etc.):

1. The occupations of operating or assisting to operate any of the following power-driven paper-products machines:
   a. Arm-type wire stitcher or stapler, circular or band saw, corner cutter or mitering machine, corrugating and single- or double-facing machine, envelope die-cutting press, guillotine papercutter or shear, horizontal bar scorer, laminating or combining machine, sheeting machine, or vertical slotter.
   b. Scrap paper balers and paper box compactors, including those machines that process other materials in addition to paper.
   c. Platen diecutting press, platen printing press, or punch press which involves hand feeding of the machine.
2. The occupations of operating or assisting to operate any baler that is designed or used to process materials other than paper.
3. The occupations of operation or assisting to operate any compactor that is designed or used to process materials other than paper.
4. The occupations of setting up, adjusting, repairing, oiling, or cleaning any of the machines listed in paragraphs (a)(1), (2), and (3) of this section.

*Exemptions*

1. The exemption for student-learners and apprentices applies to HO 12.
2. Section 13(c)(5) of the FLSA permits 16- and 17-year-old employees to load, but not operate or unload, certain scrap paper balers and paper box compactors if all of the following conditions are met:
   a. the scrap paper balers and the paper box compactors must meet an applicable American National Standard Institute (ANSI) Standard as discussed in the following chart:[5]

| In order for employers to take advantage of the limited exception discussed in this section, the *scrap paper baler* must meet one of the following ANSI Standards: | In order for employers to take advantage of the limited exception discussed in this section, the *paper box compactor* must meet one of the following ANSI Standards: |
|---|---|
| ANSI Standard Z245.5-1990 | ANSI Standard Z245.2-1992 |
| ANSI Standard Z245.5-1997 | ANSI Standard Z245.2-1997 |
| ANSI Standard Z245.5-2004 | ANSI Standard Z245.2-2004 |
| ANSI Standard Z245.5-2008 | ANSI Standard Z245.2-2008 |

   b. the scrap paper balers and paper box compactors cannot be operated while being loaded;
   c. the scrap paper balers and paper box compactors include an on-off switch incorporating a key-lock or other system and the control of the system is maintained in the custody of employees who are 18 years of age or older;
   d. the on-off switch of the scrap paper balers and paper box compactors is maintained in an off position when the equipment is not in operation; and
   e. the employer posts a notice on each scrap paper baler and each paper box compactor that 16- and 17-year-olds will be loading which states (*see* §:570.63(c)):
      - the equipment meets an appropriate ANSI Standard mentioned above, or a more recent applicable ANSI Standard that the Secretary of Labor has certified as being as protective of minors as those listed above – *Note: the specific standard must be listed on the notice in its entirety*;
      - Sixteen- and 17-year-old employees may only load the scrap paper baler and paper box compactor; and
      - any employee under the age of 18 may not operate or unload the scrap paper baler and paper box compactor.[6]

*Definitions*

1. *Applicable ANSI Standard* means one of the American National Standard Institute Standards listed in the above chart, or a newer standard that the Secretary of Labor has certified as being as

---

[5] The FLSA also allows the equipment to meet more recent ANSI standards that the Secretary of Labor has certified to be at least as protective of the safety of minors as the Standards listed above.

[6] There is no prescribed format for the notice but it must contain all the information as stated in subparagraph 2e. Posting a notice will satisfy the requirement that employers also provide notice.

protective of minors as those listed in the chart on page 21.  The ANSI standards for scrap paper balers and paper box compactors govern the manufacture and modification of the equipment, the operation and maintenance of the equipment, and employee training.

2.  *Baler that is designed or used to process materials other than paper* means a powered machine designed or used to compress materials other than paper and cardboard boxes, with or without binding, to a density or form that will support handling and transportation as a material unit without requiring a disposable or reusable container.

3.  *Compactor that is designed or used to process materials other than paper* means a powered machine that remains stationary during operation, designed or used to compact refuse other than paper or cardboard boxes into a detachable or integral container or into a transfer vehicle.

4.  *Operating or assisting to operate* means all work that involves starting or stopping a machine covered by this section, placing materials into or removing materials from a machine, including clearing a machine of jammed materials, paper, or cardboard, or any other work directly involved in operating the machine.  The term does not include the stacking of materials by an employee in an area nearby or adjacent to the machine where such employee does not place the materials into the machine.

5.  *Paper box compactor* means a powered machine that remains stationary during operation, used to compact refuse, including paper boxes, into a detachable or integral container or into a transfer vehicle.

6.  *Paper products machine* means all power-driven machines used in (1) remanufacturing or converting paper or pulp into a finished product, including preparing such materials for recycling; or (2) preparing such materials for disposal.  The term applies to such machines whether they are used in establishments that manufacture converted paper or pulp products, or in any other type of manufacturing or nonmanufacturing establishment.  The term also applies to those machines which, in addition to paper products, process other material for disposal.

7.  *Scrap paper baler* means a powered machine used to compress paper and possibly other solid waste, with or without binding, to a density or form that will support handling and transportation as a material unit without requiring a disposable or reusable container.

## HO 13 - Occupations Involved in the Manufacture of Brick, Tile, and Kindred Products

The following occupations involved in the manufacture of clay construction products and of silica refractory products are prohibited:

1.  All work in or about establishments in which clay construction products are manufactured, *except*
    a.  work in storage and shipping;
    b.  work in offices, laboratories, and storerooms; and
    c.  work in the drying departments of plants manufacturing sewer pipe.
2.  All work in or about establishments in which silica brick or other silica refractories are manufactured *except* work in offices.
3.  Nothing in this section shall be construed as permitting employment of minors in any occupations prohibited by any other HO issued by the Secretary of Labor.

*Definitions*

1.  The term *clay construction products* shall mean the following clay products:  brick, hollow structural tile, sewer pipe and kindred products, refractories, and other clay products such as architectural terra cotta, glazed structural tile, roofing tile, stove lining, chimney pipes and tops, wall coping, and draintile.  The term shall not include the following non-structural-bearing clay products:  ceramic floor and wall tile, mosaic tile, glazed and enameled tile, faience, and similar tile, nor shall the term include non-clay construction products such as sand-lime brick, glass brick, or non-clay refractories.
2.  The term *silica brick or other silica refractories* shall mean refractory products produced from raw materials containing free silica as their main constituent.

## HO 14 - Occupations Involving the Operation of Circular Saws, Band Saws, Guillotine Shears, Chain Saws, Reciprocating Saws, Wood Chippers, and Abrasive Cutting Discs

The following occupations are prohibited in any type of establishment (manufacturing, non-manufacturing, retail, wholesale, service, etc.):

1. The occupations of operator of or helper on the following power-driven fixed or portable machines *except* for machines equipped with full automatic feed and ejection:  circular saws, band saws, and guillotine shears.
2. The occupations of operator of or helper on the following power-driven fixed or portable machines: chain saws, reciprocating saws, wood chippers, and abrasive cutting discs.
3. The occupations of setting-up, adjusting, repairing, oiling, or cleaning circular saws, band saws, guillotine shears, chain saws, reciprocating saws, wood chippers, and abrasive cutting discs.

*Exemption*

The exemption for student-learners and apprentices applies to HO 14.

*Definitions*

1. *Abrasive cutting disc* shall mean a machine equipped with a disc embedded with abrasive materials used for cutting materials.
2. *Band saw* shall mean a machine equipped with an endless steel band having a continuous series of notches or teeth, running over wheels or pulleys, and used for sawing materials.
3. *Chain saw* shall mean a machine that has teeth linked together to form an endless chain used for cutting materials.
4. *Circular saw* shall mean a machine equipped with a thin steel disc having a continuous series of notches or teeth on the periphery, mounted on shafting, and used for sawing materials.
5. *Guillotine shear* shall mean a machine equipped with a moveable blade operated vertically and used to shear materials.  The term shall not include other types of shearing machines, using a different form of shearing action, such as alligator shears or circular shears.
6. *Helper* shall mean a person who assists in the operation of a machine covered by this section by helping place materials into or remove them from the machine.

7. *Operator* shall mean a person who operates a machine covered by this section by performing such functions as starting or stopping the machine, placing materials into or removing them from the machine, or any other functions directly involved in operation of the machine.
8. *Reciprocating saw* shall mean a machine equipped with a moving blade that alternately changes direction on a linear cutting axis used for sawing materials.
9. *Wood chipper* shall mean a machine equipped with a feed mechanism, knives mounted on a rotating chipper disc or drum, and a power plant used to reduce to chips or shred such materials as tree branches, trunk segments, landscape waste, and other materials.

## HO 15 - Occupations Involved in Wrecking, Demolition, and Shipbreaking Operations

All occupations in wrecking, demolition, and shipbreaking operations are prohibited.

*Definitions*

The term *wrecking, demolition, and shipbreaking operations* shall mean all work, including cleanup and salvage work, performed at the site of the total or partial razing, demolishing, or dismantling of a building, bridge, steeple, tower, chimney, or other structure, ship or other vessel.

22

## HO 16 - Occupations in Roofing Operations and All Work On or About a Roof

All occupations in roofing operations and all work on or about a roof are prohibited.

*Exemption*

The exemption for student-learners and apprentices applies to HO 16.

*Definitions*

1.  The term *roofing operations* means all work performed in connection with the installation of roofs, including related metal work such as flashing, and applying weatherproofing materials and substances (such as waterproof membranes, tar, slag or pitch, asphalt prepared paper, tile, composite roofing materials, slate, metal, translucent materials, and shingles of asbestos, asphalt, wood or other materials) to roofs of buildings or other structures.  The term also includes all jobs on the ground related to roofing operations such as roofing laborer, roofing helper, materials handler and tending a tar heater.
2.  The term *on or about a roof* includes all work performed upon or in close proximity to a roof, including carpentry and metal work, alterations, additions, maintenance and repair, including painting and coating of existing roofs; the construction of the sheathing or base of roofs (wood or metal), including roof trusses or joists; gutter and downspout work; the installation and servicing of television and communication equipment such as cable and satellite dishes; the installation and servicing of heating, ventilation and air conditioning equipment or similar appliances attached to roofs; and any similar work that is required to be performed on or about roofs.

## HO 17 - Occupations in Excavation Operations

The following occupations in excavation operations are prohibited:

1.  Excavating, working in, or backfilling (refilling) trenches, *except*
    -   manually excavating or manually backfilling trenches that do not exceed four feet in depth at any point, or
    -   working in trenches that do not exceed four feet in depth at any point.
2.  Excavating for buildings or other structures or working in such excavations, *except*
    -   manually excavating to a depth not exceeding four feet below any ground surface adjoining the excavation, or
    -   working in an excavation not exceeding such depth, or
    -   working in an excavation where the side walls are shored or sloped to the angle of repose.
3.  Working within tunnels prior to the completion of all driving and shoring operations.
4.  Working within shafts prior to the completion of all sinking and shoring operations.

*Exemption*

The exemption for student-learners and apprentices applies to HO 17.

23

## Special Provisions Permitting the Employment of Certain Minors in Places of Business that Use Machinery to Process Wood Products

Section 13(c)(7) of the FLSA permits the employment of certain minors between the ages of 14 and 18, inside and outside of places of businesses where machinery is used to process wood products. This exemption applies only to a minor who is:

1. exempt from compulsory school attendance beyond the eighth grade either by statute or judicial order, and,
2. is supervised in the work place by an adult relative or adult member of the same religious sect or division as the minor.

Although a minor meeting these requirements maybe employed inside and outside of places of businesses that use machinery to process wood products—activities normally prohibited by Child Labor Regulation No. 3 and HO 4—the minor is still prohibited from operating, or assisting to operate, any power-driven woodworking machines.  This prohibition includes the starting and stopping of the machines and the feeding of materials into the machines as well as the off-bearing of materials from the machines.

Such minors are also prohibited from cleaning, oiling, setting-up, adjusting and maintaining the machines.  Minors 14 and 15 years of age must be employed in compliance with the remaining occupations and hours standards of CL Regulation No. 3.  In addition, such minors must be protected from wood particles or other flying debris within the workplace by a barrier appropriate to the potential hazard of such wood particles or flying debris or by maintaining a sufficient distance from machinery in operation.  The minors are also required to use personal protective equipment to prevent exposure to excessive levels of noise and sawdust.

## Exemptions from Certain HOs for Apprentices and Student-Learners

Hazardous Occupations Orders Nos. 5, 8, 10, 12, 14, 16, and 17 contain exemptions for 16- and 17-year-old apprentices and student-learners provided they are employed under the following conditions:

Apprentices:

1. the apprentice is employed in a craft recognized as an apprenticeable trade;
2. the work of the apprentice in the occupations declared particularly hazardous is incidental to his or her training;
3. such work is intermittent and for short periods of time and is under the direct and close supervision of a journeyman as a necessary part of such apprentice training; and
4. the apprentice is registered by the Bureau of Apprenticeship and Training of the U. S. Department of Labor as employed in accordance with the standards established by that Bureau, or is registered by a state agency as employed in accordance with the standards of the state apprenticeship agency recognized by the Bureau of Apprenticeship and Training, or is employed under a written apprenticeship agreement and conditions which are found by the Secretary of Labor to conform substantially with such federal or state standards.

Student-Learners:

1. the student-learner is enrolled in a course of study and training in a cooperative vocational training program under a recognized state or local educational authority or in a course of study in a substantially similar program conducted by a private school; and
2. such student-learner is employed under a written agreement which provides:
   a. that the work of the student-learner in the occupations declared particularly hazardous shall be incidental to the training,
   b. that such work shall be intermittent and for short periods of time, and under the direct and close supervision of a qualified and experienced person,
   c. that safety instruction shall be given by the school and correlated by the employer with on-the-job training, and
   d. that a schedule of organized and progressive work processes to be performed on the job shall have been prepared.

24

Each such written agreement shall contain the name of the student-learner, and shall be signed by the employer and the school coordinator or principal. Copies of each agreement shall be kept on file by both the school and the employer.  This exemption for the employment of student-learners may be revoked in any individual situation where it is found that reasonable precautions have not been observed for the safety of minors employed thereunder.

A high school graduate may be employed in an occupation in which training has been completed as provided in this paragraph as a student-learner, even though the youth is not yet 18 years of age.

Although the regulations do not provide definitions of the terms *intermittent* and *short periods of time*, the Wage and Hour Division interprets those terms to mean that an apprentice or student-learner may not be the principal operator of prohibited machinery.  He or she must work under the close supervision of a fully qualified and experienced adult, such as a journeyman. Further, the duties assigned the minor may not be such that he or she is constantly operating the prohibited machinery during the work shift, but only doing so as part of the training experience.  This would preclude an apprentice or student-learner from being a production worker, responsible for spending a significant portion of the workday operating prohibited machinery or performing prohibited tasks.  The Wage and Hour Division considers the continuous performance of otherwise prohibited work that exceeds one hour a day to be more than *intermittent* and more than for *short periods of time*.  The Wage and Hour Division also considers the performance of otherwise prohibited work which totals more than 20% of the student-learner's work shift to be more than for *short periods of time*.

The regulations do not define the term *direct and close supervision*.  The Wage and Hour Division's interpretation of *direct and close supervision* as it applies to apprentices and student-learners is based on guidance received from the Bureau of Apprenticeship and Training (BAT) which is part of the U. S. Department of Labor's Employment and Training Administration.  BAT establishes ratios governing the number of journeymen and apprentices that may be employed on the job site in order to ensure worker safety and that the apprentices receive both proper training and supervision.  BAT has advised the Wage and Hour Division that the most widely used ratio is one apprentice for the first journeyman on-site, and one apprentice for every three additional journeymen thereafter.  The Wage and Hour Division considers the requirement of *direct and close supervision* to be met

when there is one journeyman or experienced adult working with the first apprentice/student-learner on-site, and at least three journeymen or experienced adults working alongside each additional apprentice/student-learner.  Of course, the requirement for *direct and close supervision* applies only during the periods when the apprentice/student-learner is actually performing work that would otherwise be prohibited by the HO.

## Age Certificates

Employers may protect themselves from unintentional violation of the child labor provisions by keeping on file an employment or age certificate for each minor employed to show that the minor is the minimum age for the job.  Although the Wage and Hour Division no longer issues age certificates, certificates issued under most state laws are acceptable for purposes of the FLSA.

## Enforcement of the Federal Child Labor Provisions

The Wage and Hour Division, which is part of the Department of Labor, administers and enforces the child labor, minimum wage, overtime and recordkeeping provisions of the Fair Labor Standards Act.  The Wage and Hour Division also has enforcement responsibility for programs covering such things as prevailing wages for government contracts, the payment of special minimum wages, farm labor, family and medical leave, immigration and polygraph testing.  Wage and Hour Division Investigators, who are stationed across the United States, are authorized to conduct investigations and gather data on wages, hours of work, and compliance with all the provisions of the FLSA, including the child labor provisions.

25

## Penalties for Violation

### *Civil Money Penalties*

Employers may be subject to a civil money penalty of up to $11,000 for each employee who is the subject of a child labor violation.  The penalty may be increased to $50,000 for each violation that causes the death or serious injury of a minor, and that penalty may be doubled when the violations are determined to be repeated or willful.[7]  When a civil money penalty is assessed against an employer for a child labor violation, the employer has the right, within 15 days after receipt of the notice of such penalty, to file an exception to the determination that the violation or violations occurred.

When such an exception is filed with the office making the assessment, the matter is referred to the Chief Administrative Law Judge, and a formal hearing is scheduled.  At such a hearing, the employer may, or an attorney retained by the employer may, present such witnesses, introduce such evidence and establish such facts as the employer believes will support the exception.  The determination of the amount of any civil money penalty becomes final if no exception is taken to the administrative assessment thereof, or if no exception is filed pursuant to the decision and order of the administrative law judge.

### *Hot Goods Injunction*

The FLSA authorizes the Department of Labor to seek injunctions to halt interstate commerce of goods tainted by "oppressive child labor."  Section 12(a) of the FLSA (29 U.S.C. 212(a)) prohibits interstate commerce in such "hot" goods, stating that "[n]o producer, manufacturer, or dealer shall ship or deliver for shipment in commerce any goods produced in an establishment in the United States in or about which within 30 days prior to the removal of such goods therefrom any oppressive child labor [as defined in section 3(l), 29 U.S.C. 203(l)] has been employed."  It is not necessary for the employees to be working on the goods that are removed for shipment in order for those goods to be considered "hot goods."

### *Injunction to Compel Compliance*

The FLSA authorizes the Department of Labor to seek injunctions against violators of the child labor provisions to compel their compliance with the law.  Further violations could result in sanctions against such persons for contempt of court.

### *Criminal Sanctions*

The FLSA also provides, in the case of a willful violation, for a fine up to $10,000; or, for a second offense committed after the conviction of such person for a similar offense, for a fine of not more than $10,000 or imprisonment for not more than 6 months, or both.

## Additional Information

For information about the federal child labor requirements, visit the ***YouthRules!*** Web site at http://www.youthrules.dol.gov.

Inquiries about the Fair Labor Standards Act or any other law administered by the Wage and Hour Division may be addressed to any local office of the Wage and Hour Division.  Additional information is available on our Home Page located at http://www.dol.gov/whd/index.htm.

Locate the Wage and Hour Division office nearest to you, telephone our toll-free information and helpline at 1-866-4US-WAGE (1-866-487-9243): a customer service representative is available to assist you with referral information from 8am to 5pm **in your own time zone**; or log onto the nationwide listing of Wage-Hour District Offices located at: http://www.dol.gov/whd/america2.htm.

---

[7] Pub. L. 110-223 revised FLSA § 16(e) authorizing increased civil money penalties for child labor violations occurring on or after May 21, 2008, that cause the death or serious injury of any minor employee.

**U.S. Department of Labor**

**Wage and Hour Division**



(Revised July 2009)

# Fact Sheet #2: Restaurants and Fast Food Establishments Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees of restaurants and fast food establishments.

### Characteristics

The restaurant/fast food industry includes establishments which are primarily engaged in selling and serving to purchasers prepared food and beverages for consumption on or off the premises.

### Coverage

Restaurants/fast food businesses with annual gross sales from one or more establishments that total at least $500,000 are subject to the FLSA. Also, any person who works on or otherwise handles goods that are moving in interstate commerce is individually subject to the minimum wage and overtime protection of the FLSA. For example, a waitress or cashier who handles a credit card transaction would likely be subject to the Act.

### Requirements

Minimum Wage: Covered non-exempt workers are entitled to a federal minimum wage of not less than $7.25 per hour effective July 24, 2009. Wages are due on the regular payday for the pay period covered. Deductions made from wages for items such as cash shortages, required uniforms, or customer walk-outs are illegal if the deduction reduces the employee's wages below the minimum wage or cuts into overtime pay. Deductions made for items other than board, lodging, or other recognized facilities normally cannot be made in an overtime workweek. Tips may be considered as part of wages, but the employer must pay not less than $2.13 an hour in direct wages and make sure that the amount of tips received is enough to meet the remainder of the minimum wage.

Food Credit: The employer may take credit for food which is provided at cost. This typically is an hourly deduction from an employee's pay. However, the employer cannot take credit for discounts given employees on food (menu) prices.

Tips: Tipped employees are those who customarily and regularly receive more than $30 a month in tips. Employees must be informed in advance if the employer elects to use the tip credit, the amount of tip credit to be claimed, and the employer must be able to show that employees receive at least the applicable minimum wage when wages and tips are combined. Also, employees must retain all of their tips, except to the extent that they participate in a valid tip pooling or sharing arrangement.

Overtime: Overtime must be paid at a rate of at least one and one-half times the employee's regular rate of pay for each hour worked in excess of 40 hours per week. Tipped employees who receive $2.13 per hour in direct wages are also subject to overtime at one and one-half times the applicable minimum wage, not one and one-half times $2.13.

Youth Minimum Wage: The 1996 Amendments to the FLSA allow employers to pay a youth minimum wage of not less than $4.25 an hour to employees who are under 20 years of age during the first 90 consecutive calendar days after initial employment by their employer. The law contains certain protections for employees that prohibit employers from displacing any employee in order to hire someone at the youth minimum wage.

## Youth Employment

Youths 14 and 15 years old may work outside school hours in various non-hazardous jobs only under the following conditions: no more than 3 hours on a school day, 18 hours in a school week, 8 hours on a non-school day, or 40 hours in a non-school week. Also, work may not begin before 7 a.m., nor end after 7 p.m., except from June 1 through Labor Day, when evening hours are extended to 9 p.m. Permitted occupations for 14 and 15 year old employees include those such as cashier, office/clerical work, bagging orders, cleanup work, hand-cleaning vegetables, etc. Cooking and baking cannot generally be performed by minors under age 16.

Youths 16 and 17 years old may perform any non-hazardous job, for unlimited hours. Examples of equipment declared hazardous in restaurants include power-driven meat processing machines (saws, patty forming machines, grinding, chopping or slicing machines), commercial mixers, and certain power-driven bakery machines. Employees under 18 are not permitted to operate, feed, set-up, adjust, repair or clean such machines. Generally, no employee under 18 years of age may drive or serve as an outside-helper on a motor vehicle on a public road; but 17-year-olds who meet certain specific requirements may drive automobiles and trucks that do not exceed 6,000 pounds gross vehicle weight for limited amounts of time as part of their job. Such minors are, however, prohibited from making time sensitive deliveries (such as pizza deliveries or other trips where time is of essence) and from driving at night.

### Typical Problems

If uniforms are required by the employer the cost of the uniform is considered to be a business expense of the employer. If the employer requires the employee to bear the cost, such cost may not reduce the employee's wages below the minimum wage or cut into overtime compensation.

Exemptions from Overtime: Section 13(a)(1) of the FLSA provides an exemption from FLSA monetary requirements for an employee employed in a bona fide executive, administrative or professional capacity or as an outside salesperson. An employee will qualify for exemption if all pertinent tests relating to duties, responsibilities and salary, as set forth in Regulations, 29 CFR Part 541, are met. The salary and duties tests for the exemptions are fully described in Regulations Part 541.

### Where to Obtain Additional Information

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                      **1-866-4-USWAGE**
Frances Perkins Building                                           TTY: 1-866-487-9243
200 Constitution Avenue, NW                                       **Contact Us**
Washington, DC 20210

**U.S. Department of Labor**
Wage and Hour Division



## Fact Sheet #2A: Child Labor Rules for Employing Youth in Restaurants and Quick-Service Establishments Under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the federal child labor provisions to restaurants and quick-service establishments that employ workers who are less than 18 years of age. For detailed information about the federal youth provisions, please read Regulations, 29 CFR Part 570.

The Department of Labor is committed to helping young workers find positive, appropriate, and safe employment experiences. The child labor provisions of the FLSA were enacted to ensure that when young people work, the work does not jeopardize their health, well-being, or educational opportunities. Working youth are generally entitled to the same minimum wage and overtime protections as older adults. For information about the minimum wage and overtime e requirements in the restaurant and quick-service industries, please see Fact Sheet # 2 in this series, *Restaurants and Quick Service Establishment under the Fair Labor Standards Act*.

**Minimum Age Standards for Employment**

The FLSA and the child labor regulations, issued at 29 CFR Part 570, establish both hours and occupational standards for youth. Youth of any age are generally permitted to work for businesses entirely owned by their parents, except those under 16 may not be employed in mining or manufacturing and no one under 18 may be employed in any occupation the Secretary of Labor has declared to be hazardous.

| | |
|---|---|
| **18 Years of Age** | Once a youth reaches 18 years of age, he or she is no longer subject to the federal child labor provisions. |
| **16 & 17 Years of Age** | Sixteen- and 17-year-olds may be employed for unlimited hours in any occupation other than those declared hazardous by the Secretary of Labor. Examples of equipment declared hazardous in food service establishments include:<br><br>**Power-driven meat processing machines** (meat slicers, meat saws, patty forming machines, meat grinders, and meat choppers), commercial mixers and certain power-driven bakery machines. Employees under 18 years of age are not permitted to operate, feed, set-up, adjust, repair, or clean any of these machines or their disassembled parts. |

FS 2A

| 16 & 17 Years of Age Continued | **Motor Vehicles**. Generally, no employee under 18 years of age may drive on the job or serve as an outside helper on a motor vehicle on a public road, but 17-year-olds who meet certain specific requirements may drive automobiles and trucks that do not exceed 6,000 pounds gross vehicle weight for limited amounts of time as part of their job. Such minors are, however, prohibited from making time sensitive deliveries (such as pizza deliveries or other trips where time is of the essence) and from driving at night. (*See* Fact Sheet # 34:  *Child Labor Provisions and the Driving of Automobiles and Trucks under the Fair Labor Standard Act.*)

**Balers and Compactors**. Minors under 18 years of age may not load, operate, or unload balers or compactors. Sixteen- and 17-year-olds may load, but not operate or unload, certain scrap paper balers and paper box compactors under certain specific circumstances. (*See* Fact Sheet #57: in this series, Hazardous Occupations Order No. 12. Hazardous Occupations Order No. 12, *Rules for Employing Youth and the Loading, Operating, and Loading of Power-Driven Balers and Compactors under the Fair Labor Standards Act (FLSA)*). |
| --- | --- |
| **14 & 15 Years of Age** | Fourteen- and 15- year-olds may be employed in restaurants and quick-service establishments outside school hours in a variety of jobs for limited periods of time and under specified conditions.   Child Labor Regulations No. 3, 29 C.F.R. 570, Subpart C limits both the time of day and number of hours this age group may be employed as well as the types of jobs they may perform. |
| | **Hours and times of day standards for the employment of 14- and 15-year-olds:** |  **Occupation standards for the employment of 14- and 15-year-olds:** |
| | <ul><li>outside school hours;</li><li>no more than 3 hours on a school day, including Fridays;</li><li>no more than 8 hours on a nonschool day;</li><li>no more than 18 hours during a week when school is in session;</li><li>no more than 40 hours during a week when school is not in session;</li><li>between 7 a.m. and 7 p.m. - except between June 1 and Labor day when the evening hour</li></ul> | <ul><li>They may perform cashiering, table service and "busing," and clean up work, including the use of vacuum cleaners and floor waxers.</li><li>They may perform kitchen work and other work involved in preparing food and beverages, including the operation of devices used in such work, such as dish-washers, toasters, milk shake blenders, warming lamps, and coffee grinders.</li><li>They may perform limited cooking duties involving electric or gas grills that do not entail cooking over an open flame. They may also cook with deep fat fryers that are equipped with and utilize devices that automatically raise and lower the "baskets" into and out of the hot grease of oil. They may not operate NEICO broilers, rotisseries, pressure cookers, *fryolators*, high-speed ovens, or rapid toasters.</li></ul> |

| | | |
|---|---|---|
| **14 & 15 Years of Age Continued** | is extended to 9 p.m.<br><br>School hours are determined by the local public school in the area the minor is residing while employed. | • They may not perform any baking activities.<br>• They may dispense food from cafeteria lines and steam tables and heat food in microwave ovens that do not have the capacity to heat food over 140º F.<br>• They may not operate, clean, set up, adjust, repair or oil power driven machines including food slicers, grinders, processors, or mixers.<br>• They may clean kitchen surfaces and non-power-driven equipment, and filter, transport and dispose of cooking oil, but only when the temperature of the surface and oils do not exceed 100º F.<br>• They may not operate power-driven lawn mowers or cutters, or load or unload goods to or from trucks or conveyors.<br>• They may not work in freezers or meat coolers, but they may occasionally enter a freezer momentarily to retrieve items.<br>• They are prohibited from working in any of the Hazardous Orders (discussed above for 16- and 17-year-olds). |
| | | |
| **Under 14 Years of Age** | Children under 14 years of age may not be employed in non-agricultural occupations covered by the FLSA, including food service establishments. Permissible employment for such children is limited to work that is exempt from the FLSA (such as delivering newspapers to the consumer and acting). Children may also perform work not covered by the FLSA such as completing minor chores around private homes or casual baby-sitting. | |

### Work Experience and Career Exploration Program (WECEP)

WECEP is a program designed to provide a carefully planned work experience and career exploration program for 14- and 15-year-old youths who can benefit from a career oriented educational program designed to meet the participants' needs, interests and abilities. The program is aimed at helping youths to become reoriented and motivated toward education and to prepare them for the world of work.

State Departments of Education are granted approval to operate a WECEP by the Administrator of the Wage and Hour Division for a 2-year period. Certain provisions of child labor provisions are modified for 14- and 15-year-old participants during the school term.

Students enrolled in an authorized WECEP:

- My work during school hours.

- May work up to 3 hours on a school day; and as many as 23 hours in a school week.

- May work in some occupations that would otherwise be prohibited under a variance issued by the Administrator, but they may not work in manufacturing, mining or any of the 17 Hazardous Occupations.

Individual employers may partner with participating local school districts in those states authorized to operate WECEPs.

**Work-Study Program (WSP)**

WSP is a program designed to help academically oriented students enrolled in a college preparatory high school curriculum pursue their college diplomas.  Some of the hours standards provisions of Child Labor Regulation No. 3 are varied for certain 14- and 15-year-old students participating in a Department of Labor approved and school-supervised and administered WSP.  Participating students must be enrolled in a college preparatory curriculum and identified by authoritative personnel of the school as being able to benefit from the WSP.

Students enrolled in an authorized WSP:

- May work no more than 18 hours in any one week when school is in session, a portion of which may be during school hours, in accordance with the following formula that is based upon a continuous four-week cycle:

  o In three of the four weeks, the participant is permitted to work during school hours on only one day per week, and for no more than for eight hours on that day.
  o During the remaining week of the four-week cycle, such minor is permitted to work during school hours on no more than two days, and for no more than for eight hours on each of those two days.
  o The employment of such minors would still be subject to the remaining time of day and number of hours standards contained Child Labor Regulation No. 3 and discussed earlier in this fact sheet.

- Are held to all the occupation standards established by Child Labor Regulation No. 3.

**Where to Obtain Additional Information**

**For more information on the FLSA child labor provisions, including a complete list of all hazardous occupation orders, visit the YouthRules! Web site at www.youthrules.dol.gov.**

**For additional information on the Fair Labor Standards Act, visit the Wage and Hour Division Web site: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

When state child labor laws differ from the federal provisions, an employer must comply with the higher standard. Links to your state labor department can be found at www.dol.gov/whd/contacts/state_of.htm.

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

U.S. Department of Labor          1-866-4-US                          WAGE
Frances Perkins Building                                  TTY:  1-866-487-9243
200 Constitution Avenue, NW                                    Contact Us
Washington, DC 20210

# Departamento de Trabajo de EEUU
## Sección de Horas y Sueldos



(July 2009)

## Hoja de datos #2: Restaurantes y Establecimientos de Comida Rápida bajo la Ley de Normas Justas de Trabajo (FLSA – siglas en inglés)

Esta hoja de datos provee información general con respecto a la aplicación de la FLSA a empleados de restaurantes y establecimientos de comida rápida.

### Características

El restaurante/la industria de comida rápida incluyen establecimientos que se ocupan principalmente  de la venta y atención a compradores de comida y bebidas preparadas para el consumo dentro o fuera de los establecimientos.

### Cobertura

Los restaurantes/negocios de comida rápida con ventas anuales brutas de uno o más establecimientos con un total de ventas de por lo menos $500.000 están sujetos a la FLSA. También, cualquier persona que trabaja o maneja bienes que se mueven en el comercio interestatal está sujeta individualmente a la protección de salario mínimo y sobretiempo de la FLSA. Por ejemplo, un mesero o cajero que maneja una transacción de tarjeta de crédito probablemente está sujeto a la Ley.

### Requisitos

Salario mínimo:

Los empleados no exentos bajo el alcance de la ley tienen derecho a un salario mínimo federal de no menos de $7,25 por hora, vigente desde el 24 de julio de 2009. Los  salarios se deben pagar en el día regular de pago para el periodo de pago que cubre. Las deducciones realizadas de los salarios por artículos tales como faltantes en caja, uniformes requeridos, clientes que  se van sin pagar son ilegales si la deducción reduce los salarios de los empleados por debajo del salario mínimo o reduce el pago de sobretiempo. Las deducciones hechas por artículos aparte de comida, hospedaje u otras comodidades reconocidas normalmente no suelen  poder hacerse en una semana laboral de sobretiempo. Las propinas pueden considerarse como parte de los salarios, pero el empleador tiene que pagar no menos de $2,13 por hora en salarios directos y asegurarse  de que la cantidad de propinas recibidas sea suficiente para cumplir el remanente del salario mínimo.

Crédito por comida: El empleador puede tomar crédito por comida que se proporcione al costo. Esto generalmente es una deducción por hora del pago de un empleado. Sin embargo, el empleador no puede tomar crédito por descuentos dados a los empleados por precios de comida (menú).

FS 2-SP

Propinas: Los empleados que reciben propinas son aquellos que habitual y regularmente reciben más de $30 en propinas mensualmente. Los empleados tienen que ser informados por adelantado si el empleador elige usar el crédito de propinas, la cantidad de crédito de propinas a solicitarse, y el empleador tiene que poder mostrar que los empleados reciben al menos el salario mínimo cuando se combinan los salarios y las propinas. Además, los empleados tienen que retener todas sus propinas, excepto en la medida en que participen en una recolección de propinas o acuerdo de compartir.

Sobretiempo: El sobretiempo tiene que pagarse a una tasa de por lo menos tiempo y medio de la tasa regular de pago del empleado por cada hora trabajada en exceso de 40 horas por semana. Los empleados que reciben propinas y que reciben $2,13 por hora en salarios directos están también sujetos al pago de sobretiempo de tiempo y medio de la tasa regular de pago del salario mínimo applicable, no a tiempo y medio de $2,13.

Salario mínimo para jóvenes: Las enmiendas de 1996 a la FLSA permiten a los empleadores pagar un salario mínimo para jóvenes de no menos de $4,25 por hora a los empleados que tienen menos de 20 años de edad durante los primeros 90 días civiles consecutivos después del empleo inicial con su empleador. La ley contiene ciertas protecciones para los empleados que prohíben a los empleadores desplazar a cualquier empleado con el fin de contratar a alguien a un salario mínimo para jóvenes.

## **Empleo para jóvenes**

Los jóvenes de 14 y 15 años pueden trabajar fuera de las horas escolares en varios trabajos no arriesgados solo bajo las siguientes condiciones: no más de 3 horas en un día de clases, 18 horas en una semana escolar, 8 horas cuando no haya clases o 40 horas en una semana no escolar. Además, no pueden trabajar antes de las 7 de la mañana ni después de las 7 de la tarde, excepto desde el 1ero de junio hasta el Día del Trabajo, cuando sus horas permisibles se extienden hasta las 9 de la noche. Las ocupaciones permitidas para los empleados de 14 y 15 años incluyen aquellas tales como de cajero, trabajo de oficina, empaque de órdenes, trabajo de limpieza y limpieza de verduras a mano. Los trabajos de cocinar y hornear no pueden llevarse a cabo generalmente por menores de 16 años.

Los jóvenes de 16 y 17 años pueden realizar cualquier trabajo que no sea arriesgado por horas ilimitadas. Ejemplos de equipos declarados arriesgados en restaurantes incluyen máquinas de procesamiento de carnes accionadas por motor (cortadoras de sierras, máquinas de relleno automático, moledoras, máquinas de tajar o de rebanar), batidoras comerciales y ciertas máquinas de pastelería accionadas por motor. Los empleados menores de 18 años no están permitidos a operar, alimentar, configurar, ajustar, reparar ni limpiar tales máquinas. Generalmente, ningún empleado menor de 18 años puede operar o servir como ayudante de afuera en un vehículo a motor en una vía pública; pero jóvenes de 17 años de edad que cumplen ciertos requisitos específicos pueden conducir automóviles y camiones que no excedan las 6.000 libras de peso bruto por cantidades de tiempo como parte de su trabajo. Tales menores están, sin embargo, prohibidos de realizar ciertas entregas sensibles de tiempo (tales como pizza, entregas a domicilio u otros viajes donde el tiempo es esencial) y de conducir de noche.

2

**Problemas típicos**

Si se requieren uniformes por parte del empleador, el costo del uniforme se considerara ser un gasto de negocios del empleador. Si el empleador requiere que el empleado pague el costo, tal costo no puede reducir los salarios de los empleados por debajo del salario mínimo o reducir la compensación de sobretiempo.

Exenciones de sobretiempo: La sección 13(a)(1) de la FLSA provee una exención de los requisitos monetarios de la FLSA para un empleado que trabaja en un cargo, de buena fe, como ejecutivo, administrador o como profesional o como vendedor externo. Un empleado calificará para la exención si cumple con todas las pruebas pertinentes relacionadas con las obligaciones, responsabilidades y salario, estipuladas en los reglamentos 29 CFR Parte 541. Las pruebas de salario y obligaciones para las exenciones se describen ampliamente en los Reglamentos Parte 541.

**Dónde obtener información adicional**

**Para información adicional, visite nuestro sitio Web de la División de Horas y Sueldos: http://www.wagehour.dol.gov y/o llame a la línea gratuita de información y ayuda, disponible de 8 de la mañana a 5 de la tarde en su huso horario, 1-8664USWAGE (1-866-487-9243).**

Esta publicación brinda información general y no debe considerarse de la misma forma que las declaraciones oficiales de opinión contenidas en los reglamentos.

**Departamento de Trabajo de EEUU**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Póngase en Contacto con Nosotros**

WHD Fact Sheet #2
Restaurants and Fast Food Establishments under the Fair Labor Standard Act (FLSA)
Revised July 2009

3

# U.S. Department of Labor
## Wage and Hour Division



The Department announced a Final Rule focused primarily on updating the salary and compensation levels needed for Executive, Administrative and Professional workers to be exempt. For more information, see http://www.dol.gov/whd/overtime/final2016/.

U.S. Wage and Hour Division
(Revised July 2008)

## Fact Sheet #23: Overtime Pay Requirements of the FLSA

This fact sheet provides general information concerning the application of the overtime pay provisions of the FLSA.

**Characteristics**

An employer who requires or permits an employee to work overtime is generally required to pay the employee premium pay for such overtime work.

**Requirements**

Unless specifically exempted, employees covered by the Act must receive overtime pay for hours worked in excess of 40 in a workweek at a rate not less than time and one-half their regular rates of pay. There is no limit in the Act on the number of hours employees aged 16 and older may work in any workweek. The Act does not require overtime pay for work on Saturdays, Sundays, holidays, or regular days of rest, as such.

The Act applies on a workweek basis. An employee's workweek is a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods. It need not coincide with the calendar week, but may begin on any day and at any hour of the day. Different workweeks may be established for different employees or groups of employees. Averaging of hours over two or more weeks is not permitted. Normally, overtime pay earned in a particular workweek must be paid on the regular pay day for the pay period in which the wages were earned.

The regular rate of pay cannot be less than the minimum wage. The regular rate includes all remuneration for employment except certain payments excluded by the Act itself. Payments which are not part of the regular rate include pay for expenses incurred on the employer's behalf, premium payments for overtime work or the true premiums paid for work on Saturdays, Sundays, and holidays, discretionary bonuses, gifts and payments in the nature of gifts on special occasions, and payments for occasional periods when no work is performed due to vacation, holidays, or illness.

Earnings may be determined on a piece-rate, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the average hourly rate derived from such earnings. This is calculated by dividing the total pay for employment (except for the statutory exclusions noted above) in any workweek by the total number of hours actually worked.

Where an employee in a single workweek works at two or more different types of work for which different straight-time rates have been established, the regular rate for that week is the weighted average of such rates. That is, the earnings from all such rates are added together and this total is then divided by the total number of hours worked at all jobs. In addition, section 7(g)(2) of the FLSA allows, under specified conditions, the computation of overtime pay based on one and one-half times the hourly rate in effect when the overtime work is performed. The requirements for computing overtime pay pursuant to section 7(g)(2) are prescribed in 29 CFR 778.415 through 778.421.

Where non-cash payments are made to employees in the form of goods or facilities, the reasonable cost to the employer or fair value of such goods or facilities must be included in the regular rate.

**Typical Problems**

Fixed Sum for Varying Amounts of Overtime: A lump sum paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money paid is equal to or greater than the sum owed on a per-hour basis. For example, no part of a flat sum of $180 to employees who work overtime on Sunday will qualify as an overtime premium, even though the employees' straight-time rate is $12.00 an hour and the employees always work less than 10 hours on Sunday. Similarly, where an agreement provides for 6 hours pay at $13.00 an hour regardless of the time actually spent for work on a job performed during overtime hours, the entire $78.00 must be included in determining the employees' regular rate.

Salary for Workweek Exceeding 40 Hours: A fixed salary for a regular workweek longer than 40 hours does not discharge FLSA statutory obligations. For example, an employee may be hired to work a 45 hour workweek for a weekly salary of $405. In this instance the regular rate is obtained by dividing the $405 straight-time salary by 45 hours, resulting in a regular rate of $9.00. The employee is then due additional overtime computed by multiplying the 5 overtime hours by one-half the regular rate of pay ($4.50 x 5 = $22.50).

Overtime Pay May Not Be Waived: The overtime requirement may not be waived by agreement between the employer and employees. An agreement that only 8 hours a day or only 40 hours a week will be counted as working time also fails the test of FLSA compliance. An announcement by the employer that no overtime work will be permitted, or that overtime work will not be paid for unless authorized in advance, also will not impair the employee's right to compensation for compensable overtime hours that are worked.

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Contact Us**

**Departamento De Trabajo de EEUU**
División de Horas y Salarios



(Octubre 2007)

## Hoja de datos #23: Requisitos para el pago de sobretiempo bajo la Ley de Normas Razonables de Trabajo

Esta ficha técnica ofrece información general con respecto a la aplicación de las disposiciones de la Ley de Normas Razonables de Trabajo (FLSA) para el pago de sobretiempo.

**Características**

Un empleador que requiere o permite que un empleado trabaje sobretiempo generalmente debe pagar al empleado una prima por el trabajo de sobretiempo.

**Requisitos**

A menos que estén expresamente exentos, los empleados bajo el alcance de la Ley deben recibir el pago de sobretiempo a una tasa no inferior a tiempo y medio de la tasa regular de pago del trabajador por cada hora trabajada en exceso de 40 en una semana laboral. La Ley no establece limitaciones con respecto al número de horas que los empleados mayores de 16 años pueden trabajar en una semana laboral. La Ley no requiere el pago de sobretiempo por trabajar los sábados, domingos, feriados o días de descanso como tales.

La Ley se aplica por semana laboral. La semana laboral de un empleado es un período fijo y regularmente recurrente de 168 horas, siete períodos consecutivos de 24 horas. No es necesario que coincida con una semana calendario, sino que puede comenzar en cualquier día y a cualquier hora. Se pueden establecer diferentes semanas laborales para diferentes empleados o grupos de empleados. No se permite un promedio de horas entre dos o más semanas. Por lo general, el pago de sobretiempo devengado en una semana en particular debe realizarse en el día de pago habitual para el período en el cual fue ganado.

La tasa regular de pago no puede ser inferior al salario mínimo. La tasa regular incluye toda remuneración por el empleo, excepto ciertos pagos excluidos por la Ley misma. Los pagos que no son parte de la tasa regular incluyen el pago de gastos incurridos en representación del empleador, pagos de primas por sobretiempo trabajado o las primas verdaderas pagadas por el trabajo en días sábados, domingos y feriados, bonos discrecionales, obsequios y pagos en forma de obsequio en ocasiones especiales, y pagos por períodos ocasionales cuando no se realiza trabajo debido a vacaciones, feriados o enfermedad.

Las ganancias pueden determinarse en base a destajo o por pieza, salario, comisión u otros criterios, pero en todos los casos el pago de sobretiempo adeudado deberá computarse en base a la tasa por hora promedio derivada de tales ganancias. Esto se calcula dividiendo el pago total por empleo (con la excepción de las exclusiones nombradas por ley mencionadas anteriormente) en cualquier semana laboral por el número total de horas realmente trabajadas.

Cuando un empleado en una sola semana laboral realiza dos o más tipos diferentes de trabajo para los cuales se han establecido diferentes tasas regulares de pago, la tasa regular para esa semana se determinará calculando el promedio de tales tasas. Es decir, las ganancias de tales tasas se suman y el total se divide por el número total de horas trabajadas en todas las funciones. Adicionalmente, el artículo 7(g)(2) de la FLSA permite, bajo ciertas condiciones, el cálculo del pago de sobretiempo basado en tiempo y medio de la tasa de pago vigente en el

FS 23-SP

momento de trabajarse el sobretiempo. Los requisitos para el cálculo del pago de horas extra según el artículo 7(g)(2) figuran en 29 CFR 778.415 hasta 778.421.

Cuando se realizan pagos que no sean en efectivo, en forma de mercaderías o servicios, el costo razonable para el empleador o el valor de tales bienes o servicios debe incluirse en la tasa regular.

**Problemas típicos**

Suma fija para cantidades variables de sobretiempo: un monto por trabajo realizado durante las horas de sobretiempo sin tener en cuenta el número de horas de sobretiempo trabajadas no se considera una prima de sobretiempo aunque la cantidad de dinero pagada sea igual o mayor a la suma adeudada basada en la tasa por hora. Por ejemplo, ninguna parte de un monto de $180 para empleados que trabajan sobretiempo un domingo se considerará como una prima de sobretiempo, aunque la tasa por hora de los empleados sea de $12.00 la hora y los empleados siempre trabajen menos de 10 horas el domingo. Del mismo modo, cuando un acuerdo establece un pago de 6 horas a $13.00 por hora independientemente del tiempo real dedicado al trabajo realizado durante las horas de sobretiempo, la totalidad de los $78.00 debe incluirse para determinar la tasa regular de los empleados.

Salario para la semana laboral que excede las 40 horas: un salario fijo por una semana laboral regular que exceda las 40 horas no representa una exención de las obligaciones establecidas en la FLSA. Por ejemplo, un empleado puede ser contratado para trabajar 45 horas por semana laboral por un salario semanal de $405. En este caso la tasa regular que se obtiene dividiendo los $405 del salario directo por 45 horas es de $9.00. Entonces al empleado se le adeuda el pago de sobretiempo adicional calculado multiplicando las 5 horas de sobretiempo por la mitad de la tasa regular de pago ($4.50 x 5 = $22.50).

No se puede renunciar al pago de sobretiempo: no se puede renunciar al requisito de sobretiempo por un acuerdo entre empleador y empleados. Un acuerdo que establezca que sólo se computarán como horas trabajadas 8 horas por día o sólo 40 horas a la semana tampoco cumple con la Ley de Normas Razonables de Trabajo. Un anuncio por parte del empleador estableciendo que no se permitirá trabajar sobretiempo, o que el sobretiempo no se pagará a menos que sea autorizado por adelantado, tampoco cercenará el derecho del trabajador a una retribución por las horas de sobretiempo trabajadas.

**Dónde obtener información adicional**

**Para mayor información, visite nuestro sitio en la Red de Horas y Salarios: http://www.wagehour.dol.gov o comuníquese llamando a nuestro servicio gratuito de información y asistencia Horas y Salarios, disponible de 8 a.m. a 5 p.m. en su zona horaria, 1-866-4USWAGE (1-866-487-9243).**

Esta publicación tiene por objeto brindar información general y no deberá ser considerada del mismo tenor que las declaraciones oficiales de postura contenidas en los reglamentos.  La presente ficha es parte de una serie de fichas técnicas que presentan los diferentes programas del Departamento de Trabajo de los EE. UU. El objetivo es brindar únicamente una descripción general y no tiene validez jurídica.

**U.S. Department of Labor**                                      **1-866-4-USWAGE**
Frances Perkins Building                                           TTY: 1-877-889-5627
200 Constitution Avenue, NW                              Comuníquese con nosotros
Washington, DC 20210

**U.S. Department of Labor**
Wage and Hour Division



(Revised July 2008)

# Fact Sheet #21: Recordkeeping Requirements under the Fair Labor Standards Act (FLSA)

This fact sheet provides a summary of the FLSA's recordkeeping regulations, 29 CFR Part 516.

**Records To Be Kept By Employers**

Highlights: The FLSA sets minimum wage, overtime pay, recordkeeping, and youth employment standards for employment subject to its provisions. Unless exempt, covered employees must be paid at least the minimum wage and not less than one and one-half times their regular rates of pay for overtime hours worked.

Posting: Employers must display an official poster outlining the provisions of the Act, available at no cost from local offices of the Wage and Hour Division and toll-free, by calling 1-866-4USWage (1-866-487-9243). This poster is also available electronically for downloading and printing at http://www.dol.gov/osbp/sbrefa/poster/main.htm.

What Records Are Required: Every covered employer must keep certain records for each non-exempt worker. The Act requires no particular form for the records, but does require that the records include certain identifying information about the employee and data about the hours worked and the wages earned. The law requires this information to be accurate. The following is a listing of the basic records that an employer must maintain:

1. Employee's full name and social security number.
2. Address, including zip code.
3. Birth date, if younger than 19.
4. Sex and occupation.
5. Time and day of week when employee's workweek begins.
6. Hours worked each day.
7. Total hours worked each workweek.
8. Basis on which employee's wages are paid (e.g., "$9 per hour", "$440 a week", "piecework")
9. Regular hourly pay rate.
10. Total daily or weekly straight-time earnings.
11. Total overtime earnings for the workweek.
12. All additions to or deductions from the employee's wages.
13. Total wages paid each pay period.
14. Date of payment and the pay period covered by the payment.

How Long Should Records Be Retained: Each employer shall preserve for at least three years payroll records, collective bargaining agreements, sales and purchase records. Records on which wage computations are based should be retained for two years, i.e., time cards and piece work tickets, wage rate tables, work and time schedules, and records of additions to or deductions from wages. These records must be open for inspection by the Division's representatives, who may ask the employer to make extensions, computations, or transcriptions. The records may be kept at the place of employment or in a central records office.

FS 21

What About Timekeeping: Employers may use any timekeeping method they choose. For example, they may use a time clock, have a timekeeper keep track of employee's work hours, or tell their workers to write their own times on the records. Any timekeeping plan is acceptable as long as it is complete and accurate.

The following is a sample timekeeping format employers may follow but are not required to do so:

| DAY | DATE | IN | OUT | TOTAL HOURS |
|------|------|------|------|------|
| Sunday | 6/3/07 | -------- | -------- | -------- |
| Monday | 6/4/07 | 8:00am | 12:02pm | |
| | | 1:00pm | 5:03pm | 8 |
| Tuesday | 6/5/07 | 7:57am | 11:58am | |
| | | 1:00pm | 5:00pm | 8 |
| Wednesday | 6/6/07 | 8:02am | 12:10pm | |
| | | 1:06pm | 5:05pm | 8 |
| Thursday | 6/7/07 | -------- | -------- | -------- |
| Friday | 6/8/07 | -------- | -------- | -------- |
| Saturday | 6/9/07 | -------- | -------- | -------- |

**Total Workweek Hours:**                                                      **24**

Employees on Fixed Schedules: Many employees work on a fixed schedule from which they seldom vary. The employer may keep a record showing the exact schedule of daily and weekly hours and merely indicate that the worker did follow the schedule. When a worker is on a job for a longer or shorter period of time than the schedule shows, the employer must record the number of hours the worker actually worked, on an exception basis.

**Where to Obtain Additional Information**

**F**or additional information, visit our Wage and Hour Division Website: **http://www.wagehour.dol.gov** and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                         **1-866-4-USWAGE**
Frances Perkins Building                                               TTY: 1-866-487-9243
200 Constitution Avenue, NW                                              **Contact Us**
Washington, DC 20210

**Departamento De Trabajo de EEUU**
División de Horas y Salarios



(Octubre 2007)

# Hoja de datos #21: Requisitos para preservar los Registros conforme a la Ley de Normas Razonables de Trabajo (FLSA-abreviatura en inglés)

Esta hoja de datos proporciona un resumen de los Requisitos para preservar los Registros de la FLSA, 29 CFR Parte 516.

**Registros que deben mantener los empleadores.**

Temas Importantes: La Ley de Normas Razonables de trabajo, FLSA establece normas sobre salarios mínimos, pago de horas extra**s**, preservación de registros y empleo de menores.   A menos que sean exentos**,** a los empleados  protegidos por esta ley, se les deberá pagar al menos el salario mínimo y no menos del equivalente a una hora y media de su tarifa habitual, por horas extras trabajadas.

Póster: Los empleadores deben exhibir un anuncio oficial que contenga las disposiciones de la Ley, disponible en forma gratuita en las oficinas locales de la División de Horas y Salarios, y comunicándose sin cargo al 1-866-4USWage (1-866-487-9243). Este póster también se puede descargar e imprimir por vía electrónica http://www.dol.gov/osbp/sbrefa/poster/main.htm

Registros Requeridos: Cada empleador cubierto por la ley**,** debe mantener ciertos registros para cada trabajador no exento. La Ley no exige un formulario especial para los registros, pero sí obliga a que los registros incluyan cierta información identificativa del empleado y datos acerca de las horas trabajadas y los salarios percibidos. La ley exige que esta información sea precisa. A continuación, se enumeran los registros básicos que el empleador debe mantener:

1. Nombre completo y número de seguro social del empleado.
2. Domicilio, incluído el código postal.
3. Fecha de nacimiento, si es menor de 19 años.
4. Sexo y ocupación.
5. Hora y día de la semana en que comienza la semana laboral del empleado.
6. Horas trabajadas por día.
7. Total de horas trabajadas cada semana.
8. Bases sobre las que se pagan los salarios del empleado (por ejemplo, "$9 por hora", "$440 por semana", "a destajo")
9. Tarifa habitual por hora.
10. Total de remuneraciones diarias o semanales sin horas extras.
11. Total de remuneración de las horas extra**s** por semana.
12. Todos los incrementos o deducciones realizadas en los salarios del empleado.
13. Salarios totales pagados en cada período.
14. Fecha de pago y período incluído en el pago.

Cómo mantener los registros de asistencia? Los empleadores pueden utilizar el método que elijan para controlar la asistencia.  Por ejemplo, pueden utilizar un reloj registrador, tener una persona que registre las horas de trabajo del empleado, o solicitarles a sus trabajadores que anoten sus propios horarios en los registros. Se acepta cualquier plan de control de horarios, siempre que sea completo y preciso.

A continuación, se detalla un formato de control horario que los empleadores pueden adoptar, aunque no están obligados a hacerlo:

| DÍA | FECHA | INGRESO | SALIDA | TOTAL DE HORAS |
|-----|-------|---------|--------|----------------|
| Nombre del Empleado: | | | | |
| Domingo | 5/6/07 | | -------- | |
| Lunes | 5/7/07 | 8:00 | 12:02 | |
| | | 1:00 | 5:03 | 8 |
| Martes | 5/8/07 | 7:57 | 11:58 | |
| | | 1:00 | 5:00 | 8 |
| Miércoles | 5/9/07 | 8:02 | 12:10 | |
| | | 1:06 | 5:05 | 8 |
| Jueves | 5/10/07 | | -------- | |
| Viernes | 5/11/07 | | -------- | |
| Sábado | 5/12/07 | | -------- | |
| Total de horas semanales | | | | 24 |

Empleados con horarios fijos: Muchos empleados trabajan en un horario fijo que rara vez varía. El empleador puede llevar un registro que indique el horario exacto de horas diarias y semanales, y simplemente indicar que el trabajador cumplió el horario. Cuando un empleado trabaja más ó menos tiempo que el que indica el calendario de trabajo, el empleador debe registrar la cantidad de horas que el empleado  realmente trabajó, como una excepción.

Tiempo que deben conservarse los registros: Cada empleador conservará durante al menos tres años los registros de pagos, los acuerdos de negociaciones colectivas, y los registros de ventas y de compras. Los registros sobre los cuales se basan los cálculos de los salarios deberán conservarse por dos años, por ejemplo,

tarjeta**s** de horas de trabajo, boletas de trabajos a destajo, tablas de salarios y calendarios de trabajo y horas, y registros de incrementos o deducciones salariales. Estos registros deben estar a disposición de los representantes de la División para su inspección, quienes pueden solicitar al empleador que efectúe ampliaciones, cálculos o transcripciones. Los registros deben guardarse en el lugar de trabajo o en una oficina central de registros.

**Dónde obtener información adicional**

**Para mayor información, visite nuestro sitio web Horas y Salarios: http://www.wagehour.dol.gov o comuníquese llamando a nuestro servicio gratuito de información y asistencia Horas y Salarios, disponible de 8 a.m. a 5 p.m. en su zona horaria, 1-866-4USWAGE (1-866-487-9243).**

Esta publicación tiene por objeto proveer información general y no deberá ser considerada del mismo tenor que las declaraciones oficiales expresadas en los Reglamentos.  La presente ficha es parte de una serie de fichas técnicas que presentan los diferentes programas del Departamento de Trabajo de los EE. UU. El objetivo es proveer únicamente una descripción general y no tiene validez jurídica.

**U.S. Department of Labor**                                           **1-866-4-USWAGE**
Frances Perkins Building                                                 TTY: 1-877-889-5627
200 Constitution Avenue, NW                                    Comuníquese con nosotros
Washington, DC 20210

WHD Fact Sheet #21
Recordkeeping Requirements under the Fair Labor Standards Act (FLSA)
Revised October 2007

**Departamento de Trabajo de EEUU**
Sección de Horas y Sueldos



## Hoja de Datos #2A: El Empleo de Jovenes en Restaurantes bajo la Ley de Normas Razonables de Trabajo (FLSA-abreviatura en ingles.)

Esta hoja de datos provee información general pertinente a la aplicación de las provisiones federales sobre el empleo de jóvenes en restaurantes y establecimientos de servicio rápido que emplean a jóvenes menores de 18 años de edad. Para obtener información detallada sobre las provisiones federales, vea "Regulations, 29 CFR Part 570" en la red bajo la dirección.

El Departamento de Trabajo se ha comprometido a ayudar a los trabajadores jóvenes a adquirir experiencias de empleo positivas, apropiadas y libres de peligros. Las provisiones sobre el empleo de jóvenes de la FLSA fueron promulgadas para asegurar que cuando los jóvenes trabajen, el trabajo no arriesgue su salud, bienestar u oportunidades educacionales. Los jóvenes que trabajan generalmente tienen los mismos derechos al sueldo mínimo y a las protecciones de sobretiempo que se les otorga a los adultos mayores. Para conseguir información adicional sobre estos requisitos en las industrias de restaurantes y servicios rápidos, favor de consultar la Hoja de Datos 2 en esta serie, **Restaurantes bajo la Ley de Normas Razonables de Trabajo**, la cual se encuentra en http://www.dol.gov/regs/compliance/whd/whdfs2.htm.

**Normas de Edad Básica para el Empleo**

La FLSA y los reglamentos que rigen el empleo de jóvenes, publicados en 29 CFR Parte 570, establecen ambas normas de horas y ocupación para jóvenes. Se les permite trabajar a jóvenes de cualquier edad en negocios cuyos únicos dueños sean sus padres, salvo aquellos menores de 16 los cuales no pueden ser empleados en la minería o en la fabricación y nadie menor de 18 puede ser empleado en cualquier ocupación que la Secretaria de Trabajo haya declarado arriesgada/peligrosa.

**18 Años de Edad —** En cuanto un(a) joven cumple los 18 años de edad, él o ella ya no está sujeto(a) a las provisiones federales sobre el empleo de jóvenes.

**16 & 17 Años de Edad —** Jóvenes de 16 y 17 años pueden ser empleados sin límites de horas en cualquier ocupación salvo en aquéllas declaradas arriesgadas por la Secretaria de Trabajo. Ejemplos de equipo/maquinaria declarado(a) arriesgado(a) en establecimientos de servicios de comida incluyen máquinas motorizadas de preparar carnes (cortafiambres, serruchos/sierras, maquinaria de hacer pastelillos de carne, moledoras, o cortadoras), batidoras comerciales y cierta maquinaria motorizada de panaderías. No se les permite a los empleados menores de 18 años que operen, introduzcan material, armen, ajusten, reparen o limpien dicha maquinaria.

Por lo general, no se le permite a ningún empleado menor de 18 años que conduzca en el trabajo o sirva de ayudante afuera de un vehículo motorizado en una vía pública; sin embargo, jóvenes de 17 años de edad que cumplan con ciertos requisitos específicos, pueden conducir automóviles y camiones que no excedan 6,000 libras de peso bruto de vehículo por cantidades limitadas de tiempo como parte de sus trabajos. No obstante, a dichos menores se les prohíbe hacer repartos/entregas a domicilio con exigencias de tiempo (tal como repartos de pizza o cualquier otro viaje donde el tiempo sea esencial) y que conduzcan de noche. (Véase Hoja de Datos No. 34, *Cambios Importantes en las Leyes que Regulan*

*el Empleo de Menores que Afectan el Conducir Automóviles y Camiones Bajo Orden #2 de las Ocupaciones Arriesgadas)* en http://www.dol.gov/regs/compliance/whd/whdfs34.htm.

Jóvenes menores de 18 años de edad no pueden operar o descargar empaquetadores de desechos de papel o compresores de cajas de cartón. Jóvenes de 16 y 17 años de edad pueden cargar dichas máquinas bajo ciertas circunstancias específicas. (Vea Cambio Importante en las Leyes que Regulan el Empleo de Menores que Afectan la Orden #12 de las Ocupaciones Arriesgadas y el Cargar de empaquetadores de Desechos de Papel y de Compresores de Cajas en http://www.dol.gov/regs/compliance/whd/bale.htm).

**14 & 15 Años de Edad —** Jóvenes de 14 y 15 años pueden ser empleados en restaurantes y establecimientos de servicios rápidos fuera de horas escolares en una variedad de puestos por períodos limitados de tiempo y bajo condiciones específicas.

**Normas de Horas para Jóvenes de 14 y 15 Años**

**Reglamento sobre el Empleo e Menores No. 3, 29 CFR Parte 570, Subparte C, limita las horas y cuándo duranteel día los jóvenes de 14 y 15 años pueden trabajar:**

- fuera de horas escolares
- no más de 3 horas en un día escolar, inclusive los viernes
- no más de 8 horas en un día no escolar
- no más de 18 horas durante una semana en el período escolar
- no más de 40 horas durante una semana fuera del período escolar
- entre las 7 de la mañana y las 7 de la tarde—salvo entre el primero de junio y el Día del Trabajo, cuando las horas de la tarde se extienden hasta las 9 de la noche.

**Normas Ocupacionales para Jóvenes de 14 y 15 Años**

**Jóvenes de 14 y 15 años de edad pueden trabajar en restaurantes y en establecimientos de comida de servicio rápido, pero sólo en ciertos puestos.**

- Pueden desempeñar trabajo de cocina y cualquier otro trabajo que involucre la preparación de comidas y bebidas, inclusive la operación de maquinaria utilizada en dicho trabajo, tal como lavaplatos, tostadoras, mezcladoras de batidos de leche y moledoras de café.
- Pueden servir de cajeros, camareros y en servicios de mesa(meseros), trabajar en la limpieza utilizando aspiradoras y enceradoras de piso.
- No pueden hornear y sólo pueden cocer/cocinar ligeramente como se hace en "soda fountains", en mostradores de almuerzos, tiendas de meriendas o cafeterías (donde se prepara la comida en plena vista de la clientela)
- No pueden operar segadoras de césped motorizadas o cortadoras o trabajar en congeladores o en refrigeradores de carnes.
- Se les prohíbe trabajar en cualquiera de las Arriesgadas (explicadas anteriormente para jóvenes de 16 y 17 años de edad).

**Menos de 14 A-os de Edad**

Ni-os de menos de 14 a-os de edad no pueden ser empleados en ocupaciones no agr-colas bajo el alcance de la FLSA, inclusive en establecimientos de servicios de comida. Empleo permisible para dichos

ni-os se limita a trabajos exentos de la FLSA (tal como el reparto de peri-dicos al consumidor y el actuar). Los ni-os tambi-n pueden desempe-ar trabajos no sujetos a la FLSA tal como desempe-ar faenas hogare-as sencillas en casas particular

**Experiencia Laboral y Programa para la Exploración de Carreras (WECEP—Abreviatura en inglés)**

**WECEP** es un programe concebido para proporcionarles una práctica de trabajo cuidadosamente planeada y un programe para la exploración de carreras a jóvenes de 14 y 15 años, los cuales se podrían beneficiar de un programa educativo orientado hacia las carreras ideado para satisfacer las nececidades, los intereses y las habilidades de los participantes. El programa se propone ayudar a los jóvenes reorientándolos y motivándolos hacia la enseñanza, y prepararlos para el mundo del trabajo.

El/La Administrador(a) de la Sección de Horas y Sueldos les otorga aprobación a los Departamentos Estatales de Eseñanza para operar un programa de WECEP por un periódo de 2 años. Algunas de las provisiones sobre el empleo de jóvenes se modifican para los participantes de 14 y 15 años durante el año escolar.

Pueden trabajar durante las horas escolares.

Pueden trabajar hasta 3 horas en un día escolar; y hasta 23 horas en una semana escolar.

Pueden también trabajar en algunas ocupaciones que suelen ser prohibidas bajo una variación emitida por el/la administrador(a), empero, no pueden trabajar en la fabricación, minería o en cualquiera de las 17 Ocupaciones Arriesgadas.

Empleadores particulares pueden asociarse con los distritos escolares locales que participen en los estados autorizados para operar programas de WECEP.

**Para obtener información adicional sobre YouthRules!, visite el sitio en la red bajo www.youthrules.dol.gov o llame gratuitamente al 1-866-4US-WAGE (1-866-487-9243). Todos los estados tienen sus propias provisiones sobre el empleo de jóvenes. Cuando las leyes federales y estatales difieren, la norma superior es la que se aplica.**

**Esta hoja de datos sólo tiene como fin el proveer asesoramiento general y no tiene la fuerza de un consejo legal.** El Departamento de Trabajo provee esta información para darle al público acceso a la información sobre los programas del Departamento de Trabajo. No sproveen garantías explícitas o implícitas. El "Federal Register" y el "Code of Federal Regulations" permanecen siendo las fuentes oficiales de la información reglamentaria, publicados por el Departamento.

**Departamento de**
**Trabajo de EEUU**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USWAGE**
TTY: 1-866-487-9243
**Póngase en Contacto con Nosotros**